UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WALTER E. PALMER,<br>    Petitioner,<br><br>    v.<br><br>LOIS RUSSO,<br>    Respondent. | )<br>)<br>)<br>)   C.A. No. 04-12426-NG<br>)<br>)<br>) |

GERTNER, D.J.:

**MEMORANDUM AND DECISION RE: RESPONDENT'S MOTION TO DISMISS
PETITION FOR WRIT OF HABEAS CORPUS**
**August 24, 2005**

Petitioner Walter Palmer ("Palmer") is serving a sixteen-year sentence for embezzlement, larceny and perjury. He filed a pro se petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 on several grounds, many of which are unintelligible. Respondent Lois Russo, Superintendent of the Souza-Baranowski Correctional Center ("respondent"), moves to dismiss Palmer's petition pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that it contains both exhausted and unexhausted claims.

Because the relevant precedent unequivocally calls for the dismissal of a § 2254 petition containing a mix of exhausted and unexhausted claims, as does Palmer's, and because Palmer has not moved for a stay and abeyance, respondent's motion to dismiss [document #10] is hereby **GRANTED**.[1]

**I.    BACKGROUND**

---

[1] Palmer's successive motions – Motion to Set Aside [document #19], Motion for Miscellaneous Relief [document #21], Motion for Miscellaneous Relief [document #22], and Motion for Expansion of Record [document #23] – are all hereby **DENIED** as moot.

On November 25, 1997, a Suffolk County grand jury indicted Palmer for embezzlement by a fiduciary, and for one count of perjury in violation of Mass. Gen. Laws c. 268, § 1. On January 13, 1998, Palmer was indicted for one count of larceny over $250 in violation of Mass. Gen. Laws c. 266, § 30. On October 23, 1998, Palmer was indicted for an additional six counts of embezzlement by a fiduciary in violation of Mass. Gen. Laws c. 266, § 57.

Each of the three indictments stemmed from Palmer's conduct as an executor, trustee, guardian, conservator, or administrator for seven individuals. The indictments alleged that Palmer converted assets entrusted to him for the exclusive benefit of specific beneficiaries of seven guardianships, conservatorships, trusts, and/or estates.

On November 4, 1999, after a trial, a jury found Palmer guilty on all counts of the three indictments. As a result of the three convictions, Palmer was adjudicated a "common and notorious" thief, within the meaning of Mass. Gen. Laws c. 266, § 40.[2] Palmer's convictions for embezzlement and larceny over $250 were consolidated into a single sentence and enhanced pursuant to

---

[2] Mass. Gen. Laws c. 266, § 40 provides: "Whoever, having been convicted, upon indictment, of larceny . . . is convicted at the same sitting of the court . . . of three distinct larcenies, shall be adjudged a common and notorious thief, and shall be punished by imprisonment in the state prison for not more than twenty years or in jail for not more than two and one half years." The sentence attached to being adjudged a common and notorious thief is a more severe punishment than the crime of larceny itself.

the statute. The trial judge sentenced Palmer on November 5, 1999, to a state-prison term of sixteen to eighteen years and a concurrent sentence of sixteen to eighteen years for his perjury conviction.

Palmer filed a timely notice of appeal in the state appellate court. On direct appeal, Palmer argued that (1) the larceny and fiduciary embezzlement statutes under which he was convicted are unconstitutionally vague; and (2) the trial judge erroneously refused to give a requested instruction that the jury could find that Palmer justifiably relied upon his secretary and accountant. On February 4, 2003, the Massachusetts Appeals Court affirmed Palmer's convictions in an unpublished memorandum and order pursuant to Rule 1:28. <u>Commonwealth v. Palmer</u>, 57 Mass.App.Ct. 1107, 782 N.E.2d 556 (2003).

Palmer then timely filed an Application for Leave to Obtain Further Appellate Review ("ALOFAR") in the Massachusetts Supreme Judicial Court ("SJC"). In his ALOFAR, Palmer raised the following claims: (1) the sentence imposed was illegal; (2) his criminal convictions were in violation of his First Amendment rights; (3) his conduct as a licensed attorney was constitutionally protected conduct; (4) he justifiably relied on his accountant; (5) his convictions violated the Ex Post Facto Clause of the United States Constitution; (6) the trial judge violated his constitutional rights by way of a deficient jury

charge; (7) his convictions violated his right to due process; (8) the trial judge erred by omitting a specific intent instruction; and (9) the criminal statutes that formed the basis of his convictions were vague and lacked any standard. On January 29, 2004, the SJC summarily denied Palmer's ALOFAR without issuing an opinion. <u>Commonwealth v. Palmer</u>, 441 Mass. 1102 (2004).

On November 11, 2004, Palmer filed the instant petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. His petition alleges 24 grounds for relief. Palmer rephrases and restates the thrust of his claims many times throughout his petition: "Petitioner is by education, training, experience and inclination, a trial lawyer. For over 20 years the petitioner totally and completely relied upon the administrative lay staff of petitioner's law office, Palmer & Simcock, in matters relating to record keeping, bookeeping and client's funds reconciliation and two Certified Public Accountants . . . in matters relating to accounting, tax return preparation, probate accounting, and reconciliation of client's funds accounts in relation to those tasks. <u>THE PETITIONER NEVER PERFORMED THESE ABOVE DESCRIBED TASKS, AT ANY TIME.</u>" In effect, Palmer is simply reasserting the very same defenses he asserted at trial, which were rejected by the jury; he claims that he did not direct or know about any illegal activity with regard to his clients' accounts, thereby

shielding him from culpability. He further argues that he had a First Amendment right to practice law and perform his fiduciary duties without being subject to vague laws, such as the criminal statutes under which he was convicted.

Respondent moves to dismiss Palmer's petition pursuant to Fed. R. Civ. P. 12(b)(6) because it raises a mix of exhausted and unexhausted claims. See Rose v. Lundy, 455 U.S. 509, 518-19 (1982). As described above, Palmer did not move for a stay and abeyance, the process by which a petitioner moves to have exhausted claims stayed to give him an opportunity to take his unexhausted claims to state court.

**II.   ANALYSIS**

    **A.   Section 2254's Exhaustion Requirement**

It is well-settled that a federal court reviewing a state prisoner's habeas petition should not consider claims that were not considered by the state's highest court. See Mele v. Fitchburg District Court, 850 F.2d 817, 819 (1st Cir. 1988) ("a federal court should not consider questions posed in a habeas petition until the 'power of the highest state court in respect to such questions' has been exhausted"), quoting United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 17 (1925). The exhaustion principle serves to ensure that state courts have the first opportunity to correct their own constitutional errors, thus promoting comity and "minimiz[ing] friction between our federal

and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." Rose v. Lundy, 455 U.S. at 518. Congress codified the exhaustion doctrine in the federal habeas statute itself; 28 U.S.C. § 2254(b)(1)(A) precludes federal court review unless "the applicant has exhausted the remedies available in the courts of the State."

To satisfy the exhaustion requirement, a habeas petitioner bears the burden of showing that he presented his federal habeas claims, in substance, to the state courts before seeking federal review. Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997). While not a heavy burden, "[i]t is not enough merely to raise an issue before an intermediate court; one who seeks to invoke the federal habeas power must fairly present – or do his best to present – the issue to the state's highest tribunal." Mele, 850 F.2d at 820; see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Where a petitioner raises a mixture of exhausted and unexhausted claims in his federal habeas petition, the petition should be dismissed in its entirety. Rose v. Lundy, 455 U.S. at 518-519; see also Adelson, 131 F.3d at 261 ("a federal court will not entertain an application for habeas relief unless the petitioner has first fully exhausted his state remedies with

respect to each and every claim contained within the application").

### B.  Palmer's Claims On Appeal To The State Courts

On appeal to the Massachusetts Appeals Court, Palmer raised two claims: (1) that the larceny and embezzlement statutes under which he was convicted are unconstitutionally vague; and (2) the trial judge erroneously refused to give a requested instruction that the jury could find that the defendant justifiably relied upon his secretary and accountant.  Broadly speaking this is a due process claim and a claim of justifiable reliance.  The appeals court outright denied both of Palmer's claims, noting "[w]e can only marvel at the breathtaking audacity of [Palmer]'s arguments."  Commonwealth v. Palmer, 57 Mass.App.Ct. 1107 (2003).

In his ALOFAR to the SJC, however, Palmer went further, arguing: (1) the sentence imposed was illegal; (2) his criminal convictions were in violation of his First Amendment rights; (3) his conduct as a licensed attorney was constitutionally protected conduct; (4) he justifiably relied on his accountant; (5) his convictions violated the Ex Post Facto Clause of the United States Constitution; (6) the trial judge violated his constitutional rights by way of a deficient jury charge; (7) his convictions violated his right to due process; (8) the trial judge erred by omitting a specific intent instruction; and (9) the criminal statutes that formed the basis of Palmer's

convictions were vague and lacked any standard. The SJC summarily denied his petition. Commonwealth v. Palmer, 441 Mass. 1102 (2004).

### C. **Palmer's Petition For Federal Habeas Review**

In his petition for federal habeas review, Palmer raises 24 grounds for relief, many of which are either unintelligible or redundant, or both:

> Ground 1   Palmer's petition involves issues of constitutional magnitude – the context of the First Amendment and clearly established law as determined by the United States Supreme Court, and within the meaning of 28 U.S.C. § 2254.
>
> Ground 2   The statutes under which Palmer was convicted – M.G.L. c. 266, § 57, M.G.L. c. 266, § 30, M.G.L. c. 268, § 1, and M.G.L. c. 195, § 6 – are overbroad and impermissibly vague as applied to Palmer.
>
> Ground 3   The statutes under which Palmer was convicted lack constitutionally mandated standards.
>
> Ground 4   In the context of the First Amendment, Palmer asserts the constitutional protection of the standard announced in Strickland v. Washington, 466 U.S. 668 (1984).
>
> Ground 5   Palmer's prosecution is an attack on the First Amendment, as applied through the Fifth and Fourteenth Amendments.

Ground 6   This Court must determine whether the statutes under which Palmer was convicted make unlawful Palmer's First Amendment rights and freedoms where Palmer relied on the administrative law staff of his law office and two certified public accountants (CPAs) in matters related to record keeping, book keeping, clients' funds reconciliation, accounting, tax return preparation, probate accounting and reconciliation of clients' fund accounts.

Ground 7   At all times material and relevant, Palmer in his professional conduct in practicing his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, exercised his professional judgment at the time in the context of the First Amendment, and he is thus protected by the First Amendment.

Ground 8   Palmer in practicing his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, and in the context of the First Amendment as applicable through the Fifth Amendment and clearly established federal law as determined by the Supreme Court of the United States did not violate any governing legal standard that was in violation of the Massachusetts criminal statutes under which he was convicted.

<u>Ground 9</u>   The essential elements of the Massachusetts criminal statutes involved in this case are specific intent to permanently deprive a person of their property and knowledge in the context of the First Amendment and the doctrine of reliance of Palmer as a practicing attorney and in the same professional context as a duly appointed fiduciary, in violation and deprivation of Palmer's First Amendment rights.

<u>Ground 10</u>  Palmer asserts that he totally and completely relied on the work product and practice of his administrative lay staff and CPAs, such that his conviction violated his First Amendment rights to engage, hire, retain and associate with administrative staff and CPAs.

<u>Ground 11</u>  Palmer's state of mind in the criminal case was consistent with and within the bounds of clearly established federal law as determined by the Supreme Court of the United States in practicing his profession as a licensed lawyer and a duly appointed fiduciary and he is legally and ethically entitled to the protection of the First Amendment.

<u>Ground 12</u>  Palmer's conduct in practicing his profession as a licensed lawyer and a duly appointed fiduciary, in which there was no reconciliation of the clients' fund accounts bank records for over twenty years and no evidence that the bank records for the clients' fund

                  accounts for a period of seven years were true and accurate. Thus the criminal trial and affirmation of the judgment by the Massachusetts Appeals Court rests upon speculation and in violation of Palmer's constitutional rights under the First Amendment.

Ground 13  The grand jury never returned an indictment alleging that Palmer violated any of the state perjury statutes.

Ground 14  Palmer's petition is subject to the standard held in Chapman v. California, 386 U.S. 19 (1967), as the petition involves issues of constitutional magnitude.

Ground 15  Palmer's conviction violated his right to engage in association for the advancement of belief and ideas, as affirmed in N.A.A.C.P. v. Alabama, 357 U.S. 449 (1958), since Palmer had a right to engage, hire, retain and associate with administrative lay staff and CPAs, and to rely on them in various matters.

Ground 16  Palmer's sentence is in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 124 U.S. 1493 (2004), in that it is based on facts found by a judge rather than a jury.

Ground 17  The statutes under which Palmer was convicted are unconstitutionally overboard, impermissibly vague,

              restrictive, inhibited, and contain prohibitions.

<u>Ground 18</u>  Palmer again invokes the protection of the First Amendment in carrying out his professional duties as a lawyer and a duly appointed fiduciary.

<u>Ground 19</u>  Palmer again invokes the holding in <u>Chapman</u> that all errors of constitutional magnitude are prejudicial unless the error was harmless beyond a reasonable doubt.

<u>Ground 20</u>  Palmer again invokes the holding in <u>Strickland</u> to show that his professional conduct in practicing his profession as a lawyer and a duly appointed fiduciary were constitutionally protected.

<u>Ground 21</u>  Palmer again asserts that his conviction is an attack on the very core of the First Amendment.

<u>Ground 22</u>  In the event that this Court determines that <u>Chapman</u> is inapplicable to Palmer's claims, the standard announced in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), is the default standard.

<u>Ground 23</u>  Palmer again invokes the First Amendment in arguing that the statutes under which he was convicted are unconstitutional content based restrictions.

<u>Ground 24</u>  Palmer argues that his conduct as a licensed lawyer was protected because it was vigorous advocacy, and a form of enforcing constitutional

>                    rights through litigation, and
>                    thus protected by the First
>                    Amendment.

See Petition at ¶¶ 12(A)-(X).

### D. Application Of The Exhaustion Requirement To Palmer's Claims

A plain reading of Palmer's pleadings in each of his three appeals – to the Massachusetts Appeals Court, the SJC, and this Court – reveals that a number of Palmer's habeas claims are being raised here for the first time.  Broadly speaking, those claims that assert violations of the First Amendment and Strickland were not raised at any level in the state system.

Even several of the claims that Palmer raised in his ALOFAR application to the SJC cannot be deemed exhausted because he did not raise them in the intermediate state court as he is obliged to do. A federal habeas petitioner does not exhaust a claim by attempting to raise it for the first time in a state proceeding in which review is discretionary – like the SJC's decision to grant an ALOFAR – unless the state court exercises its discretion and reaches the merits of the claim.  Castille v. Peoples, 489 U.S. 346, 351 (1989).  In Castille, the Supreme Court unanimously held that the presentation of a claim to a state's highest court for the first time on discretionary review does not satisfy the exhaustion requirement of 28 U.S.C. § 2254, unless the state supreme court actually passes on the claim.  Id. at 351.  Because the SJC rejected Palmer's ALOFAR, thereby declining to reach the

merits of his claims, those claims that were raised for the first time in that petition cannot be deemed exhausted. By that reading, the only claims that have been fully exhausted are those that were presented to the Massachusetts Appeals Court – vagueness, deficient jury instructions, and justifiable reliance.

Even if the Court were to group Palmer's 24 grounds for relief into a handful of discernable claims, Palmer's petition would still be barred from review for lack of exhaustion. Construed liberally, Palmer's petition raises seven basic claims: (1) the laws under which Palmer was convicted are unconstitutionally vague and overbroad as applied insofar as his convictions infringe his rights to professional association and expression; (2) the laws under which Palmer was convicted are facially vague and overbroad; (3) the laws under which Palmer was convicted are unconstitutional content based restrictions on speech; (4) Palmer's conviction violated his rights under <u>Strickland</u> to perform his duties as a licensed lawyer; (5) no indictment was returned on the perjury charge; (6) Palmer's sentence runs afoul of <u>Blakely</u> and <u>Apprendi</u>; and (7) the constitutional errors in Palmer's conviction are of such magnitude that they cannot be deemed harmless. At the very least, two of these claims were not presented to both state appellate courts – numbers three and four. This would still be true even if the Court went to great pains to calculate "the

probability that a reasonable jurist would have discerned the federal question[s] from a perusal of [Palmer]'s relevant state-court filings." Adelson, 131 F.3d at 262.

### III. CONCLUSION

In light of its mix of exhausted and unexhausted claims, Palmer's petition for habeas corpus relief is **DISMISSED**. Respondent's motion to dismiss [document #10] is therefore **GRANTED**. Palmer's successive motions – Motion to Set Aside [document #19], Motion for Miscellaneous Relief [document #21], Motion for Miscellaneous Relief [document #22], and Motion for Expansion of Record [document #23] – are all hereby **DENIED** as moot.

**SO ORDERED.**

**Dated: August 24, 2005**                         s/ NANCY GERTNER U.S.D.J.