UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

WALTER E. PALMER
PETITIONER

V.

CASE NO.
04-12426-NG

LOIS RUSSO, IN HER CAPACITY AS SUPERTINDENT
OF SOUZA-BARANOWSKI CORRECTIONAL CENTER
RESPONDENT

---

PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S
APPLICATION FOR CERTIFICATE OF APPEALABILITY---- AND
PETITIONER'S OBJECTIONS TO COURT'S "ORDER OF DISMISSAL"
dated August 25, 2005, and COURT'S MEMORANDUM AND DECISION
RE: RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF
HABEAS CORPUS," dated August 25,2005.

---

1.    The petitioner, Walter E. Palmer ("Palmer"), in the
above entitled case, is a pro se litigant, and is presently
being held in physical custody, as a State of Massachusetts
prisoner, pending the ongoing judicial proceedings, in the instant
case at bar before the court, as a result of an ad hoc lay jury
verdict, on November 4, 1999, at Massachusetts Suffolk County
Superior Court, Boston, Massachusetts, that petitioner's prof-
essional conduct in the practice of his profession as a licensed
lawyer, and in the same professional context as a duly appointed
fiduciary, in the context of petitioner's First Amendment rights,
violated Massachusetts **criminal statutes,** upon which the indict-
ments entirely rests, M.G.L. ch. 266 section 57; M.G.L. ch. 266
section 30; M.G.L. 195 section 6(a civil statute) and a Mass-
achusetts statite M.G.L. ch. 268 section 1, in which no, none,
zero indictment was ever returned by a Grand Jury against petitioneR.

2.    The respondent, is presently the Supertindent of the Mass-
achusetts Department of Correction, at Souza-Baranowski Correc-
tional Center, P.O. Box 8000, Shirley, Massachusetts, where the
petitioner is being held in physical custody.

## BACKGROUND

3.     In the context of Palmer's constitutional entitlement
of his guaranteed First Amendment rights and freedom, includ-
ing guaranteed First Amendment rights and freedom of association,
as applicable through  the Fifth Amendment and as applicable to
the states through the Fourteenth Amendments to the United States
Constitution, and clearly established federal law as determined
by the Supreme Court of the United States, and controlling First
Circuit federal law, the petitioner, Palmer, for over (20) twenty
years, in his professional conduct in the practice of his profess-
ion, of (40) forty years of practicing law, in the case at bar
before the court, delegated to the administrative lay staff of
his law office, Palmer & Simcock, matters relating to record
keeping, bookkeeping and reconciliation of clients funds accounts
of petitioner's law office, and engaged the services of two (2)
indenpendent Certified Public Accountants, James Argus of the
accounting firm of Argus & Freedman and Norman Freedman of the
same accounting firm, and later of the accounting firm of Zuber
& Freedman, in matters of accounting, tax return preparation,
probate accounting and reconciliation of lthose tasks, as pet-
itioner testified, under both direct and cross examination at
the criminal trial.

4.     Petitioner Palmer never performed the above described tasks,
at any time, in his entire life, in practicing his profession as
a licensed lawyer and duly appointed fiduciary, but, as <u>Palmer</u>
<u>testified</u>, on <u>cross</u> <u>examination</u>, <u>he</u>, <u>Palmer</u>, <u>totally</u> <u>and</u> <u>completly</u>

—2. of

relied upon the administrative lay staff of his law office,

Palmer & Simcock, and the (2) two Certified Public Accountants,

in the above described tasks.

5.    The Petitioner, Palmer is by education, training, exper-
ience and inclination a trial lawyer, and his law office was
equipped for a modern day trial practice. He was known to the
bench and bar as a trial lawyer, and did not hold himself out to
the public in the areas of practice outside that practice area,
as he, Palmer,testified at the criminal trial.  In practice
area outside the trial court practice,Palmer testifed he would
associate with other lawyers whose expertise was outside Palmer's
practice area, as a trial lawyer.

6.    For over (20) twenty years, there was an omission by the
administrative lay staff of Palmer's law office, Palmer & Simcock,
to reconcile the clients's funds accounts, despite the petitioner
Palmer's instruction to reconcile the clients's funds accounts,
for the reason the administrative lay staff were simply to busy
on other pressing matters in the law office to reconcile the
clients funds accounts. It was a human error.  There was no
deliberate wrongful conduct, at all.

7.    At the request of the petitioner Palmer, the office manager
of Palmer's law office, Elayne L. Maloney, from 1976 to 1995,
(who become the office manager upon the retirment in 1976 of the
managing law partner, Attorney Laurence F. Simcock, a member of
the Massachusetts Bar) wrote a letter dated May 14, 1996, which was
introduced and marked as an Exhibit, by both the Commonwealth
and the petitioner, at the state of Massachusetts criminal trial

as Exhibit 156, and is incorporated and made a part by ref-
erence in the within ~~motion~~ Memorandum as Exhibit "A".

8.  Prior to January 1, 2004, there was no requirement, under
the Massachusetts Rules of Professional Conduct, that licensed
lawyers in the practice of their profession reconcile client's
funds accounts in their law office.  In the instant case at bar
before the court involves the time period prior to January 1,
2004..

9.  Commencing January 1, 2004, pursuant to Commonwealth of Mass-
achusetts Rules of Professional Conduct, as promulated by the
Supreme Judicial Court, a copy of which is attached hereto and
marked as Exhibit "B", and incorporated herein by reference to
this motion, Massachusetts lawyers are mandated to reconcile
clients' funds at least every (60) sixty days, and to retain re-
conciliation statements.

9.  In the instant case before the court, the petitioner Palmer's
professional conduct in the practice of his profession as a lic-
ensed lawyer and in the same professional context as a duly app-
ointed fiduciary, was consistent with and in accordance with
clearly established federal law as determined by the Supreme Court
of the United States, and controlling First Circuit federal law in
Lipsett v. Blanco, 975 F.2d 934 (1st Cir. 1992), which held, "The
efficient use of paralegals is, by now, an accepted cost-saving
device." "The Supreme Court has given its blessing to such a pra-
ctice, stating: "By encouraging the use of lower cost paralegals
rather than attorneys wherever possible, permiting market-rate
billing of paralegals hours encourages cost-effective delivery of

—4 oF

legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes." citing <u>Missouri</u> v. <u>Jenkins</u>, 491 U.S. 274, 288, 109 S. Ct. 2463, 2471, 105 L.Ed.2d 229 (1989)(citation and internal quotation marks omitted), and as cited by petitioner Palmer in brief before the state of Massachusetts Appeals Court, as well as <u>Rolland</u> v. <u>Celluci</u>, 106 F. Supp.2d 128, 144 (D. Mass. 2000), all in support of petitioner's First Amendment rights and freedom, including petitioner Palmer's guaranteed First Amendment rights and freedom of association, as applicable through the Fifth Amendment and as applicable to the states through the Fourteenth Amendments to the United States Constitution, in the instant case before the court, in petitioner's practice of law as a licensed lawyer.

10. Also, in the case at bar before the court, petitioner's professional conduct in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, and in the context of petitioner Palmer's constitutional entitlement of Palmer's guaranteed First Amendment rights and freedom including petitioner's guaranteed First Amendment rights and freedom of association, as applicable through the Fifth Amendment and as applicable to the states through the Fourteenth Amendments to the United States Constitution, and clearly established federal law, as determined by the Supreme Court of the United States and controlling First Circuit federal law, the petitioner Palmer <u>did not violate any governing legal standard of professional conduct</u> that was in violation of the Massachusetts criminal statutes, M.G.L.

ch. 266 section 57; M.G.L. ch. 266 section 30; M.G.L. ch. 195 section 6 and if applicable M.G.L. ch. 268 section 1 (no indictment returned by the Grand Jury resting on M.G.L.ch. 268 section 1, as stated supra herein), upon which the indictments entirely rests

11. In a crystal clear holding, the Supreme Court of the United States in Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 152 L.Ed.2d 914 (2002), held, "In Strickland (Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984)) we said that "judicial scrutiny of a counsel's performance must be highly deferential" and that "every effort (must) be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689, 104 S. Ct. 2052."

12. Also, the Supreme Court held in Bell v. Cone, supra, "We cautioned in Strickland that a court must indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." 466 U.S., at 689, 104 S. Ct. 2052."

13. Further, the petitioner, Palmer, asserts, that based upon his education, experience and skills, at the time, of delegating ministerial tasks to the administrative lay staff of his law office, in matters relating to record keeping, bookkeeping and reconciliation of clients funds accounts, in the context of Palmer exercising his best professional judgment, and in the context of the petitioner's

1

— 6 OF

First Amendment right and freedom including petitioner's First

Amendment rights and freedom of association, in the use of the

Administrative lay staff of Palmer's law office, Palmer & Simcock,

as applicable through the Fifth Amendment and as applicable to

the states through the Fourth Amendments to the United States

Constitution, the petitioner, Palmer, asserts, for over (20)

twenty years, as described supra, Palmer, at the time, used and

exercised his best professional judgment, in his professional

conduct in the practice of his profession as a licensed lawyer and

in the same professional context as a duly appointed fiduciary,

in the instant case at bar before the court, and in the context

of the clearly established federal law, as determined by the Sup-

reme Court of the United States in Strickland v. Washington, 466

U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), cited supra

standard of professional conduct, and in controlling First Circuit

federal law.

14. The First Circuit in Ouber v. Guarino, 293 F.3d 19, 25 (1st

Cir. 2002) held, "A review court must leave "ample room for var-

iations in professional judgment." citing Strickland. 466 U.S. at

689 and "every effort must be made to eliminate the distorting eff-

ects of hindsight, to reconstruct the circumstances of counsel's

perpective at the time." Id. 689, and "we must, under law, judge

the actions occured, not the conduct's consequences after the fact."

citing Strickland, 466 U.S. at 688, 104 S. Ct.2052."

15. Thus, in the instant case at bar involving the professional

conduct of the petitioner, Palmer's practice of his profession as

a licensed lawyer and in the same professional context as a duly

appointed fiduciary, the Supreme Court in Williams v. Taylor,
529 U.S. 369, 120 S. Ct. 1479, 1512 (2000) held, "It is past
question that the rule set forth in Strickland qualifies as
"clearly established federal law, as determined by the Supreme
Court of the United States.

16.  Thus, the First Circuit in Phoenix' v. Matesanz,233 F.3d
77 (1st Cir. 2000) held, "For example, requiring a petitioner to
meet a higher burden than provided for in Strickland would be
contrary to clearly established Supreme Court precedent."

17.  The state of Massachusetts court decisions, including the
Massachusetts Court of Appeals, which is the last reasoned court
decision, and in which the petitioner cited in his brief for supp-
ort of his professional conduct, in the practice of his profession
as a licensed lawyer and in the same professional context as a
duly appointed fiduciary, the governing legal standard of profess-
ional conduct as clearly established in federal law, as determined
by the Supreme Court of the United States in Strickland v Wash-
ington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), as
cited supra, are 'contrary to' clearly established federal law,
as determined by the Supreme Court of the United States, as the
petitioner's professional conduct in the practice of his profession
as a licensed lawyer and in the same professional context as a duly
appointed fiduciary, in the instant case before the court, has never
been judicially judged and determined, in accordance with the
professional standards in Strickland v Washington, supra, and within
the meaning of 28 U.S.C. 2254(d)(1), all to petitioner's prejudice.

18.  The Supreme Court in <u>Williams</u> v. <u>Taylor</u>, 529 U.S. 369, 394 (2000) cited supra, held, "In order to establish prejudice the petitioner need only show "a probablity sufficient to undermine confidence in the outcome."

19.  Thus, based upon clearly established federal law, as determined by the Supreme Court of the United States, hindsight is <u>not</u> the measure of the petitioner's professional conduct in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, and "<u>not</u> the conduct's consequences after the fact." in the case at bar before the court.

20.  There were unintended missteps, blunders and errors of ommisson, by the administrative lay staff of the petitioner's law office, Palmer & Simcock, in the established protocol instruction given by the petitioner, Palmer, in reconciling clients funds accounts, for over (20) twenty years, even though <u>not required</u> by the Massachusetts Rules of Professional Conduct prior to January 1, 2004,(which is the period of time involved in the instant case before the court).

21.  In the context of petitioner's First Amendment rights and freedoms including petitioner's First Amendment rights and freedom of association, as applicable through the Fifth Amendment and as applicable to the states through the Fourteenth Amendments to the United States Constitution, and clearly established federal law, as determined by the Supreme Court of the United States in <u>Missouri</u> v. <u>Jenkins</u>, as cited supra in controlling First Circuit federal law in <u>Lipsett</u> v <u>Blanco</u>, 975 F.2d 934, 939 (1st Cir.1992) petitioner's professional conduct in the practice of his profession as

a licensed lawyer and in the same professional context as a
duly appointed fiduciary, was <u>not</u> novel or implausible, but was
permissible professional conduct "within the wide range of
professional assistance" in the petitioner's delegation of
ministerial tasks of record keeping, bookkeeping and recon-
ciliation of clients funds to the administrative lay staff of
petitioner's law office, Palmer & Simcock. See <u>Bell</u> v <u>Cone</u>, 535
U.S. 685, 122 S. Ct. 1843, 152 L.Ed.2d 914 (2002), citing
<u>Strickland</u> v. <u>Washington</u>, cited supra, "a court must indulge a
"strong presumption" that counsel's conduct falls within the wide
range of reasonable professional assistance because it is all too
easy to conclude that a particular act or omission of counsel was
unreasonable in the harsh light of hindsight." 466 U.S., at 689,
104 S. Ct. 2052." cited supra.

22.    The Massachusetts court decisions, including the Massachusetts
Court of Appeals, which is the last reason court decision, are
"contrary to' clearly established federal law as determined by the
Supreme Court of the United States and within the meaning of 28
U.S.C.2254(d)(1), in the case at bar before the court, because the
Massachusetts state court decisions, including the Massachusetts
Court of Appeals,"applied a rule different from the governing law
set forth in our cases" (citing <u>Bell</u> v. <u>Cone</u>, supra, citing <u>Will-</u>
<u>iams</u> v. <u>Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389
(2000), and controlling First Circuit federal law in <u>Phoenix</u> v.<u>Mat-</u>
<u>esanz</u>, 233 F.3d 77 (1st Cir. 2000), (held, "For example, requir-
ing a petitioner to meet a higher burden than provided for in
<u>Strickland</u> would be'contrary to'clearly established Supreme Court

precedent.").

23.    The state court Massachusetts decisions, including the Mass-
achusetts Appeals Court decision, which is the last reasoned
court decision, in the case at bar before the court, are 'contrary
to' clearly established federal law as determined by the Supreme
Court of the United States and within the meaning of 28 U.S.C.sec-
tion 2254(d)(1), as the Massachusetts state court decisions require
the petitioner, Palmer, "to meet a higher burden than provided for
in Strickland" in judicially judging and determining whether Pal-
mer's professional conduct in the practice of his profession as a
licensed lawyer and in the same professional context as a duly app-
ointed fiduciary,violated Massachusetts state criminal statutes,
M.G.L. ch. 266 section 57; M.G.L. ch. 266 section 30; M.G.L.ch.195
section 6( and M.G.L. ch. 268 section 1, if there was an indictment,
which petitioner asserts, that no Grand Jury ever returned an ind-
ictment that rest on this Massachusetts statute against the petit-
ioner, Palmer) upon which the indictments, in the instant case en-
tirely rests.

24.    The Massachusetts state court decisions, including the Mass-
achusetts Appeals Court, the last reasoned state of Massachusetts
court decisions, are 'contrary to' clearly established federal law
as determined by the Supreme Court of the United States and within
the meaning of 28 U.S.C. 2254(d)(1), are based on second guessing
in hindsight the petitioner's professional judgment in the practice
of his profession as a licensed lawyer and in the same professional
context as a duly appointed fiduciary, in petitioner's delegation
to the administrative lay staff of the petitioner's law office,

Palmer & Simcock, the tasks relating to record keeping, book-
keeping and reconciliation of clients' funds accounts, and to
engage the services of (2) two independent Certified Public
accountants, James Argus of the accounting firm of Argus & Free-
man and Norman Freedman of the same accounting firm and later of
the accounting firm of Zuber & Freedman, in matters relating to
accounting, tax return preparation, probate accounting and clients'
funds reconciliation, in relation to those specific tasks, and in
the context of the petitioner Palmer's First Amendment rights and
freedom, including petitioner' Palmer's First Amendment Rights
and freedom of association, as applicable through the Fifth Amen-
dment and as applicable to the states through the Fourteeth Amend-
ments to the United States Constitution, and clearly established
federal law as determined by the Supreme Court of the United States,
and controlling First Circuit federal law, to totally and complet-
ely rely upon these individuals in the tasks described and to be
constitutionally entitled to constitutionally protective conduct,
under the First Amendment, in the course of petitioner's practice
of law, in the instant case before the court.

25. Based upon clearly established federal law as determined by
the Supreme Court of the United States, and in the context of the
petitioner's First Amendment rights and freedom, including First
Amendment rights and freedom of association as applicable through
the Fifth Amendment and as applicable to the states through the
Fourteenth Amendments to the United States Constitution in the
course of the petitioner's practice of law as a licensed lawyer in

$-12$ of

established Clients' Funds Accounts in the State of Massachusetts
with duly licensed banks (Brookline Savings Bank, Brookline, Mass-
achusetts and First National Bank of Boston, Boston, Massachusetts)
pursuant to Commonwealth of Massachusetts Rules of Professional
Conduct, pursuant to Supreme Judicial Court Rule 3:07 and Rule 1.15,
prior to January 1, 2004, which time period, in the instant case
before the court, was prior to Amended Rule 1.15 Safe Keeping Prop-
erty, under Supreme Judicial Court Rule 3:07, (Rules of Prof.Con-
duct.  See attach copy of Amended rule 1.15 (which is not the sub-
ject of the case at bar, as there was no requirement prior to Jan-
uary 1, 2004, that required lawyers in Massachusetts to reconcile
Clients Funds Accounts, as stated supra in this motion) After Jan-
uary 1, 2004, it is mandated that all lawyers, reconcile clients'
funds accounts, at least every (60) sixty days and to retain re-
conciliation statements.

26.   In the context of the First Amendment rights and freedom in-
cluding the First Amendment rights and freedom of association, as
applicable to the states through the Fourteenth Amendments to the
United States Constitution, and clearly established federal law
as determined by the Supreme Court of the United States in Brown v.
Legal Foundation of Washington, 538 U.S. 216, 123 S. Ct.1406, 155
L.Ed.2d 376 (2003), held, "To recapitulate: "It is neither uneth-
ical nor illegal for lawyers to deposit their clients' funds in a
single bank account." "As we explained in Phillips (Phillips v.
Washington, 524 U.S. 156, 118 S. Ct.1025 (1998)), in the course of
their legal practice, attorneys are frequently required to hold
clients funds for various lengths of time.  It has long been recog-

nized that they have a professional obligation to avoid commig-
their own, but it is not unethical to pool several clients funds
in a single trust account."

27.    As stated and cited in petitioner's brief with the Massach-
usetts Appeals Court at page 6, "The Commonwealth's witness, James
McFadden testified generally, as a financial analyst employed
by the Attorney General's Office. (Tr.VII:6-7). Mr. McFadden's
analysis was only in reference to records he was able to obtain.
(Tr.VII:124).  The accounts he looked at only covered a short
period of time, although the analized accounts were open for a
longer length of time. (Tr. VII:125). In addition, according to
Mr. McFadden, banks do not retain records beyound seven years.
(Tr. VII:124)."

28.    Not one single sworn witness, in the criminal trial, in
this case before the court involving the professional conduct of
the petitioner practicing his profession as a licensed lawyer,
and in the same professional context as a duly appointed fid-
uciary, testifed that the clients funds bank accounts were true
and accurate, nor did any bank were the clients funds were on
deposit,attest that the bank records were true and accurate,bear-
ing in mind in the instant case, that neither the administrative
lay staff of petitioner's law office, Palmer & Simcock or the
(2) two Certified Public Accountants, did not reconcile Clients'
funds accounts for over (20) twenty years, which is an undisputed
and established fact, based upon Exhibit A (introduced by both
the Commonwealth and the petitioner, as Exhibit 156, and the trial
court testimony of the Certified Public Accountant, Norman Freed-
man. Thus, the bank of deposit, where clients' funds were deposited

records, were <u>not</u> <u>conclusive</u> <u>for</u> or <u>against</u> <u>the</u> <u>petitioner,</u> in

the instant case at bar before the court, as banks in Massach-

usetts, as a matter of law, are <u>not</u> immune from making mistakes.

29. See <u>Govoni & Sons Const</u>. v. <u>Mechanics Bank</u>, 51 Mass. App. Ct.

(2001)(Armstrong, C.J.)held, "For more than twenty years, the

Govonis employed James a Maddalena as their accountant. The Gov-

onis placed their trust in Maddalena, allowing him to keep their

financial records, reconcile their checkbooks, and prepare their

taxes. When Maddalena requested tax checks from the treasurers,

they simply signed checks in the requested amounts and gave them

back to Maddalena for routing. They did not supervise, question

or audit him, nor did they request receipts or review bank state-

ments or tax returns." "The bank argues that the vast number of

checks a modern bank must rapidly process makes it practically im-

possible for it to examine all presented checks for such informa-

tion as the identity of the named payee. While forcefully made,

the substance of this argument is called into question by a recent

report of the Federal government's check Fraud Working Group." "The

report instructs banks to confirm the identity of customers pre-

senting checks, to record identification information on the back

of each check, and to train tellers to look for telltale signs of

check fraud, including attempts to deposit checks payable to corp-

orations into accounts of individuals." "If for the sake of effic-

iency banks feel that they must forgo these prudent safeguards, they

should also appreciate that they must bear the losses that result

as a cost of doing business." "We conclude that <u>the</u> <u>bank</u> <u>wrongfully</u>

<u>debited</u> <u>plaintiff's</u> <u>account</u>..." "The bank is also liable to the

Govonis for improperly debiting their account for the ...checks which totaled..."

30. Thus, in the case at bar before the court, there was a substantial risk of <u>calculation</u> <u>error</u> because of the lack of reconciliation of clients' funds accounts by the administrative lay staff of petitioner, Palmer's law office, Palmer & Simcock, for <u>over (20) twenty years</u>, and the (2) two Certified Public Accountants, to reconcile clients funds accounts, as relates to their specific tasks, as cited supra, for over (20) twenty years.

31 In <u>Fogg</u> v. <u>Block</u>, 722 F.2d 933, 939 (1st Cir. 1983) held, "If the computer was incorrectly programmed, all the benefits would be wrong."

32. See Black's Law Dictionary, 7th Edition (1999), page 1278, "<u>Reconcilation</u> <u>Statement</u>" "An accounting or financial statement in which discrepancies are adjusted."

33. See Black's Law Dictionary, 7th Edition (1999), page 1293, "<u>reliance</u>", "Dependence or trust by a person esp. when combined with action based on that dependence or trust." Also "detrimental reliance" "Reliance by one party on the acts or representation of another, causing a worsening of the first party's position."

34. Petitioner, Palmer asserts, that in the instant case before the court, involving the professional conduct of the petitioner in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, he, Palmer, in the context of the petitioner's First Amendment rights and freedom, including the petitioner's First Amendment rights and

freedom of association, as applicable through the F̶i̶f̶t̶h̶ Amen-
dment and as applicable to the states through the Fourteenth Amen-
dments to the United States Constitution, and clearly established
federal law, as determined by the Supreme Court of the United
States, was engaged in constitutionally protective conduct, and
the petitioner, Palmer, so asserts in the instant case, his con-
stitutionally entitlement of constitutional protective conduct
in the area of the petitioner's First Amendment rights and free-
dom of delegating to the administrative lay staff of the petit-
ioner's law office, the ministerial tasks relating to record
keeping, bookkeeping and reconcilation of Clients' funds accounts
and the engagement by the petitioner, Palmer, of the (2) two
Certified Public Accountants in matters relating to accounting,
tax return preparation and reconcilation of clients' funds acc-
ounts, in relation to those specific tasks, for over (20) twenty
years.

35.    Thus, the Massachusetts court decisions, in the instant case
at bar before the court, including the Massachusetts Appeals Court
decision, as the last reasoned court decision, was 'contrary to'
clearly established federal law, as determined by the Supreme Court
of the United States, and within the meaning of 28 U.S.C.2254(d)(1).

STATE OF MIND

36.    As the petitioner, Palmer testified, in response to questions
on cross examination by the Commonwealth, at the criminal trial,
in the course of his professional conduct in the practice of his
profeesion as a licensed lawyer and in the same professional con-
text as a duly appointed fiduciary, he "totally and completely"

— 17 OF

relied upon the administrative lay staff of his law office, Pal-
mer & Simcock, in matters relating to record keeping, bookkeeping,
and reconcilation of clients funds accounts and the (2) two Cer-
tified Public Accountants, James Argus of the accounting firm of
Argus & Freedman, and Norman Freedman of the same accounting firm
and later of the accounting firm of Zuber & Freedman, in matters
relating to accounting, tax return preparation, probate account-
ing and reconcilation of clients funds accounts in relation to
those specific tasks, as he, Palmer never performed theseabove
described tasks.  The petitioner, in his testimony, at the crim-
inal trial described his trial court practice with specificity.
Thus, petitioner asserts that he is constitutionally entitled to the
constitutionally protective conduct under the First Amendment, in
his professional conduct in the practice of his profession as a
licensed lawyer and in the same professional context as a duly
appointed fiduciary, as applicable through the Fifth Amendment and
as applicable to the states through the Fourteenth Amendments to
the United States Constitution, and clearly established federal
law, as determined by the Supreme Court of the United States, and
controlling First Circuit federal law, in the instant case at bar
before the court, in his constitutionally professional protective
conduct, under the First Amendment.

CHAPMAN STANDARD

37. The petitioner in this motion, and as asserted in petitioner's
petition for habeas corpus pursuant to 28 U.S.C.2254, asserts the
standard as clearly established federal law as determined by the
Supreme Court of the United States in Chapman v. California,386 U.S.

18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967), held, 'Before a fed-
eral constitutional error can be held harmless the reviewing
court must be able to declare a belief that it was harmless
beyound a reasonable doubt. The error is prejudicial unless
the error was harmless beyound a reasonable doubt based on issues
of constitutional magnitude.

 38. Petitioner, Palmer asserts that the case at bar involving
petitioner's professional conduct in the practice of his profession
as a licensed lawyer and in the same professional context as a
duly appointed fiduciary, present issues of constitutional mag-
nitude, involving petitioner's dilemma in the delegation of min-
isterial matters of record keeping, bookkeeping and reconciliation
of clients funds accounts, by the administrative lay staff of pet-
itioner's law office, Palmer & Simcock, and the engagement, by
the petitioner Palmer, of (2) two independent Certified Public
Accountants, James Argus of the accounting firm of Argus & Free-
man and Norman Freedman of the same accounting firm, and later of
the accounting firm of Zuber & Freedman, in matters relating to
accounting, tax return preparation, probate accounting and re-
concilation of client's funds accounts in relation to those
specific tasks, in the context of the petitioner First Amendment
rights and freedom and petitioner's First Amendment rights and
freedom of association, as applicable through the Fifth Amend-
ment and as applicable to the states through the Fourteenth Amend-
ments to the United States Constitution, and clearly established
federal law, as determined by the Supreme Court of the United
States, as cited supra herein this motion, and petitioner's con-

stitutionally protective professional conduct within the area
of petitioner's professional conduct, as described herein, supra.

39.    Petitioner asserts that the Massachusetts court decisions,
including the last reasoned court decision of the Massachusetts
Appeals Court, are 'contrary to' clearly established federal law,
as determined by the Supreme Court of the United States, and con-
trolling First Circuit federal law, and within the meaning of
28 U.S.C.2254(d)(1), and the Massachusetts state court decisions
involve errors of constitutional magnitude that are prejudical
to the petitioner, in the instant case before the court, under
the petitioner First Amendment rights and freedoms, including
the petitioner's First Amendment rights and freedom of associa-
tion, as applicable through the Fifth Amendment and as applicable
to the states through the Fourteenth Amendments to the United
States Constitution, and clearly established federal law as det-
ermined by the Supreme Court of the United States and controlling
First Circuit federal law, and within the meaning of 28 U.S.C.
2254(d)(1), in the instant case before the court, as described
supra, in petitioner's professional conduct in the practice of
his profession as a licensed lawyer and in the same professional
context as a duly appointed fiduciary, which are so important
in the practice of lawyers, and the petitioner, in the use in a
modern day practice of law, in the use of paralegals and sec-
retaries, and the engagement of Certified Public Accountants, as
in the case at bar before the court.

INDENTIFYING THE CONSTITUTIONAL RIGHT

40. As cited and quoted supra, the First Circuit in Lipsett v

— 20 OF

Blanco, 975 F.2d 934, 939 (1st Cir. 1992) held, "The efficient use of paralegals is, by now, an accepted cost-saving device." "The Supreme Court has given its blessing to such a practice, stating: "By encouraging the use of lower cost paralegals rather than attorneys wherever possible, permitting market-rate billing of peralegal hours encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights lit- gation, furthers the policies underlying civil rights statutes." citing Missouri v. Jenkins, 491 U.S.274, 288, 109 S. Ct.2463, 2471, 105 L.Ed.2d 229 (1989)(citation and internal quotation marks omit- ted)."

WITHIN THE REALM OF REASONABLE OUTCOME

41. As to the use of paralegals, and outcome of use by the pet- itioner, Palmer, in his professional conduct in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, see Pincay v. Andrews, 389 F.3d 853 (9th Cir. (Cal.)2004)(Argued and Submitted En Banc) (Chief Judge , Schroeder), held, "This appeal represents a law- yer's nightmare." "A sophisticated law firm, with what it thought was a sophisticated system to determine and calendar filing dead- lines, missed a critical one: the 30-day time period in which to file a notice of appeal under Federal Rule of Appellate Procedure 4(a)(1)(A)." "Here an experienced trial judge found excusable neglect, and the appellee asks us to overturn that ruling."

42. "A majority of the active non-recused judges of the court voted to rehear the case en banc to consider whether the creation of a per se rule against delegation to paralegals, or indeed any per se rule involving missed filing deadlines, is consistent with

the United States Supreme Court's leading authority on the modern concept of excusable neglect, Pioneer Investment Services Co. v Brunswick Associates Ltd. Partnership, 507 U.S.380, 113 S. Ct.1489, 123 L.Ed.2d 74 (1993). We now hold that per se rules are not consistent with Pioneer, and we uphold the exercise of the district court's discretion to permit the filing of the notice of appeal in this case." Pincay v. Andrews, supra.

43. "Because the panel majority decided the case in part on the issue of delegation of calendaring to a paralegal, we consider the issue first. This issue was not presented to the district court, and it was raised sua sponte by the three-judge panel." Pincay v Andrew, supra..

44. "In the modern world of legal practice, the delegation of repetitive legal tasks to paralegals has become a necessary fixture." "Such delegation has become an integral part of the struggle to keep down the costs of legal representation. Moreover, the delegation of such tasks to specialized, well-educated non-lawyers may well ensure greater accuracy in meeting deadlines than a practice of having each lawyer in a large firm calculate each filing deadline anew. The task of keeping track of necessary deadlines will involve some delegation. The responsibility for the error falls on the attorney regardless of whether the error was made by any attorney or a paralegal. See Model Rules of Prof'l Conduct R. 5.5 cmt. 2 (2002) ("This Rule does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work."). We hold that delegation of the task

of ascertaining the deadline was not per se inexcusable neglect."
Pincay v. Andrews, supra.

## IN CONTEXT OF FIRST AMENDMENT AND
## MASSACHUSETTS CRIMINAL STATUTES

45 Petitioner asserts in the context of his First Amendment rights
and freedom, including petitioner's guaranteed First Amendment
rights and freedom of association, as applicable through the Fifth
Amendment and as applicable to the states through the Fourteenth
Amendments to the United States Constitution, in the context of
petitioner's professional conduct in the practice of his profession
as a licensed lawyer and in the same professional context as a duly
appointed fiduciary, the petitioner had a constitutional right of
entitlement to delegate to the administrative lay staff of his law
office, Palmer & Simcock, the ministerial tasks of record keeping,
bookkeeping and reconcilation of clients funds accounts and to en-
gage the services of (2)two independent Certified Public Account-
antants, James Argus of the accounting firm of Argus & Freedman,
and Norman Freedman of the same accounting firm, and later of
Zuber & Freedman, in matters relating to accounting, tax return
preparation, probate accounting and reconcilation of clients funds
accounts, in relation to those specific tasks, and to rely upon
those individuals, in those tasks, as described, all in the pra-
ctice of the petitioner's practice of law, as a licensed lawyer,
and to establish, with licensed banks, client's funds accounts,
that was not in violation of Massachusetts criminal statutes,
M.G.L. ch. 266 section 57, M.G.L. ch.266 section 30; M.G.L.ch.
195 section 6. in the instant case before the court, in which the

petitioner, Palmer, exercised his best professional judgment
at the time, in the above described delegation of tasks to
the administrative lay staff of his law office and the (2) two
Certified Public Accountants, as cited supra, that was consis-
tent with the governing legal standard of professional conduct in
Strickland v Washington, cited supra, and Bell v. Cone, cited
supra, and controlling First Circuit federal law in Ouber v.
Guarino, 293 F.3d 19, 25 (1st Cir.2002) cited supra. As the
First Circuit in Castillo v. Matesanz, 348 F.3d 1, 12 (1st Cir.
2003) held, you can "always Monday-morning quarterback." Hind-
sight is 20/20. There is no shortage of second-guessers in this
case at bar before the court.

46. Thus, the Massachusetts state court decisions, including the
last reason court decision of the Massachusetts Appeals Court
was 'contrary to' clearly established federal law as determined by
the Supreme Court of the United States, and controlling First
Circuit federal law, and within the meaning of 28 U.S.C. section
2254(d)(1), in the instant case before the court. As the Supreme
Court of the United States in Supreme Court of N.H. v. Piper, 470
U.S.274, 105 S. Ct. 1272, 1277, 1278 (1985) held, "We concluded
that a lawyer is not an "officer" within the meaning of that word
413 U.S. at 728, 93 S. Ct.at 2858. He...makes his own decisions,
follows his own best judgment, collects his own fees and runs his
own business." Id., at 729, 93 S. Ct.at 2858 (quoting Cammer v.
United States, 350 U.S. 399, 405, 76 S. Ct.456, 459, 100 L.Ed.474
(1956)."

— 24 OF

### CONTEXT- AND PETITIONER'S PROFESSIONAL CONDUCT IN PRACTICE OF LAW AS A LAWYER UNDER FIRST AMENDMENT RIGHTS AND FREEDOM

47. This case at bar before the court involves the professional conduct of the petitioner practicing his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, in the context of petitioner's guaranteed First Amendment rights and freedom including petitioner's guaranteed First Amendment rights and freedom of association, as applicable through the Fifth Amendment and as applicable to the states through the Fourteenth Amendments to the United States Constitution, in the petitioner's total and complete reliance upon the administrative lay staff of petitioner's law office, Palmer & Simcock, in the delegation, by the petitioner, for over (20) twenty years, to the administrative lay staff, of petitioner's law office, matters relating to record keeping, bookkeeping, and reconcilation of clients' funds accounts, and the engagement, by the petitioner, for over (20) twenty years, in petitioner's total and complete reliance, in matters relating to accounting, tax return preparation, probate accounting and reconcilation of clients' funds accounts, in relation to those specific tasks, by James Argus of the accounting firm of Argus & Freedman and Norman Freedman of the same accounting firm and later of the accounting firm of Zuber & Freedman.

48. See petitioner. Palmer's trial court testimony under both direct and cross examination, and petitioner's brief before Massachusetts Appeals Court. (Tr. 8:80-85).

49. Thus, petitioner's professional conduct, in the case at bar before the court should not be judged in a vacuum, but in context

$- 25$ 0F

involving petitioner's practice of law as a licensed lawyer, and
in the same professional context as a duly appointed fiduciary,
engaged in constitutionally protective conduct under the con-
stitutional protection of the First Amendment rights and free-
dom including First Amendment rights and freedom of association,
as aplicable through the Fifth Amendment and as applicable to the
states through the Fourteenth Amendments to the United States Con-
stitution, and clearly established federal law, as determined by
the Supreme Court of the United States and controlling First Cir-
cuit federal law, in Ouber v. Guarino, 293 F.3d 19, 25 (1st Cir.
2002), which held, that "A review court must leave 'ample room
for variations in professional judgment." citing Strickland, 466
U.S. at 689 and "every effort must be made to eliminate the dis-
torting effects of hindsight, to reconstruct the circumstances of
counsel's perpective at the time." Id. 689, and "we must, under
law, judge the actions occured, not the conduct's consequences
after the fact.." citing Strickland, 466 U.S. at 688, 104 S. Ct.
2052."

50.    See also, Phoenix v. Matesanz, 233 F.3d 77 (1st Cir. 2000),
cited supra herein, which court held, "For example, requiring a
petitioner to meet a higher burden than provided for in Strickland
would be contrary to clearly established Supreme Court precedent."

51.    Petitioner's professional conduct in the case at bar has not
been judged pursuant to the professional conduct standards in above
cited Supreme Court of the United States holding in Strickland
and controlling First Circuit federal law citing and quoting Strick-
land. Thus, see Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001)

citing Williams v. Taylor, 529 U.S. 362, 402, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), held, "After all, AEDPA imposes a requirement of deference to state court decisions, but we can hardly defer to state court on an issue the state court did not address.." See also, Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041 (2003) held, "Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence."

52. On December 23, 2003, the petitioner, filed with the Supreme Judicial Court a "motion to file FAR application late" which was allowed by the Supreme Judicial Court on December 30, 2003. On January 29, 2004, the Supreme Judicial Court denied petitioner's Application for Further Appellate Review, in which the petitioner asserted, in the context of his professional conduct in the practice of his profession as a licensed lawyer, the constitutionally protection of the First Amendment. The Supreme Judicial Court did not address the issue of petitioner's First Amendment rights and freedom, including petitioner's First Amendment rights and freedom of association..

53. The instant case before the court, in the context of petitioner's professional conduct in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, like the issue raised by the petitioner before the Supreme Judicial Court, also, raises the issue of petitioner's First Amendment rights and freedom before the court in the instant case.

54. Thus, the Supreme Court of the United States in Gentle v. State Bar of Nevada, 510 U.S. 1030, 111 S. Ct. 2720, 2726, 2734, 115 L.Ed.2d (1991) held, "We have held that "in cases raising  ⠂ ⠂ First Amendment issues," an appellate court has an obligation to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression," citing Bose Corp. v. Consumers Union of United States Inc., 466 U.S.485, 499, 104 S. Ct. 1949, 1958, 80 L.Ed.2d 284-286, 84 S. Ct. 710, 728-729, 116 L.Ed. 2d 686 (1984)."

55. The First Circuit in Ridley v. Massachusetts Bay Transp. Authority, 390 F.3d 65 (1st Cir. (Mass.) 2004) held, "We engage in de novo review of ultimate conclusions of law and mixed questions of law and fact in First Amendment cases." citing Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, 5151 U.S. 557, 567 (1995); Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 501 (1984).

56. In Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557, 115 S. Ct. 2338, (1995) held, "The 'requirement of independent appellate review...is a rule of federal constitutional law." id Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 510, 104 S. Ct.1949,at 1965 (1984), which does not limit our deference to a trial court on matters of witness credibility, citing Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 688, 109 S.Ct. 2678, 2697, 105 L.Ed. 2d 562 (1989)." "This obligation rests upon us simply because the reaches of the First Amendment are ultimately defined by the facts it is held to embrace, and we must decide for ouselves whether a

given course of conduct falls on the near or far side of the line of constitutional protection."

57.  Thus, context is important and the key to understanding the petitioner's professional conduct in the practice of his profess- as a licensed lawyer and in the same professional context as a duly appointed fiduciary, in this case at bar before the court, relates to the Massachusetts criminal statutes, upon which the indictment entirely rests against the petitioner, in petitioner's First Amendment rights and freedom including the petitioner's First Amendment rights and freedom of association, in the use of the administrative lay staff of his law office, Palmer & Simcock, in ministerial matters relating to record keeping, bookkeeping and reconcilation of clients funds accounts, and the engagement, by the petitioner, in the course of his professional conduct, in the practice of law as a licensed lawyer, (2) two Certified Public accountants. James Argus of the accounting firm of Argus & Free- dman and Norman Freedman of the same accounting firm, and later of the accounting firm of Zuber & Freedman, in matters of account- ing, bookkeeping, tax return preparation, probate accounting and reconcilation of clients funds accounts in relation to those spec- ific tasks, and Massachusetts criminal statutes, upon which the indictments, in the instant case entirely rests,(Copies of statutes).

58.  The Supreme Court in Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809, 109 S. Ct. 1500, 103 L.Ed.Ed.2d 891 (1989) held, "It is a fundamental canon of statutory construction that the words of  a statute must be read in their context and with a view to their place in the overall statutory scheme."

$$- 29 \quad OF$$

59. In U.S. v. Balsys, ____U.S.___, 118 S. Ct. 2218, 2223, (1998), held,"...the cardinal rule to construe provisions in context." citing King ʰv St. Vincent's Hospital, 502 U.S.215, 221, 112 S. Ct. 570, 574, 116 L.Ed.2d 578 (1991).

60. In a First Circuit case, U.S. v. Lilly, 983 F.2d 300, 307, (1st Cir. 1992) held, "Context frequently determines meaning."

6¶. Also, cancelled checks, as relevant in the case at bar as to petitioner's professional conduct in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, in the context of the petitioner's First Amendment rights and freedom including the petitioner's First Amendment rights and freedom of association, as to the del-egation to the administrative lay staff of his lay office in matt-ers relaing to record keeeping, bookkeeping and reconciliation of clients funds accounts and the engagement of the services of the (2) two Certified Public Accountants, as cited supra. in matters relating to accounting, tax return preparation, probate account-ing and reconcilation of clients funds accounts in relation to those tasks, the cancelled checks merely add to the context, as to pet-itioner's totally and complete reliance, on those individuals, as described supra, in the delegation of the tasks, in the context of the Massachusetts criminal statutes, M.G.L.ch. 266 section 57; M.G.L. ch.266 section 30; M.G.L.ch 195 section 6 (an issue if this Massachusetts statute is a criminal or civil statute and applicable to the charges against the petitioner) and M.G.L.ch. 268 section 1, (if there was an indictment). and petitioner's constitutionally

—30 0F

protected conduct, as to the Massachusetts criminal statutes, supra, in the case at bar, under First Amendment rights and freedom of association, as applicable through the Fifth Amendment and as applicable to the states through the Fourteenth Amendments to the United States Constitution,and clearly established federal law, as determined by the Supreme Court of the United States and controlling First Circuit federal law, as cited supra and in accompanying Memorandum of Law in support of this motion, on file with the court, in petitioner's practice of law.

62.    Thus, the Supreme Court of the United States in NAACP v. Alabama, 357 U.S. 449, 460-461, 78 S. Ct. 1163, 1170-1171, 2 L. Ed. 1488 (1958) and reaffirmed in McConnell v. Federal Election Com'n,___U.S.___ , 124 S. Ct. 619 (2003) held, "the freedom of association is necessary for the advancement of other First Amendment freedoms." "Subsequent decisions have made it clear the First and Fourteenth Amendments guarantee "freedom to associate with others for the common advancement of political, social, economic, educatiional, religious and cultural ends.:" citing Roberts v. United States Jaycees, 468 U.S. 609, 622, 104 S. Ct.3244, 82 L.Ed.2d 462 (1984). "State action that effectively chills the freedom  to associate is subject to "the closet scrutiny." NAACP v. Alabama, 357 U.S. at 460-61, 78 S. Ct. at 1171, cited supra.
63.    "The freedom protected against federal encroachment by the First Amendment are entitled under the Fourteenth Amendment to the same protection from infringement by the states." see United Mine Workers v. Illinois State Bar Association, 389 U.S.217, 88 S. Ct. 353 (1967). See also, Gentle v. State Bar of Nevada, 510 U.S.1030,

111 S. Ct. 2720, 2726,2734, 115 L.Ed.2d 288 (1991), cited supra, as to petitioner, Walter E. Palmer's substantial amount of constitutionally protected conduct, in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, in the case at bar before the court. 64. As to the Massachusetts criminal statutes, in the case at bar, the the Supreme Court in Houston v. Hill, 482 U.S. 451, 107 S. Ct. 2502 (1987) held, "Criminal statutes must be scrutinized with particular care, citing Winters V. New York, 333 U.S. 507, 68 S. Ct. 665, 670, 92 L.Ed.840 (1948), those that make unlawful a substantantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." citing Kolendar v. Lawson, 461 U.S. 352, at 359 n.8(1983). 65. Petitioner, Palmer asserts that his professional conduct in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, in the instant case at bar before the court, involving "the use of lower cost paralegals" in the context of petitioner's First Amendment rights and freedom including petitioner's guaranteed First Amendment rights and freedom of association, as applicable through the Fifth Amendment and as applicable to the states through the Fourteenth Amendments to the United States Constitution, and clearly established federal law, as determined by the Supreme Court of the United States in Missouri v. Jenkins, 491 U.S. 274, 288, 109 S. Ct. 2463, 2471, 105 L.Ed.2d 229 (1989), as cited and quoted in Lipsett v. Blanco, 975 F.2d 934 (1st Cir. 1992), as cited supra herein, the Massachusetts criminal statutes, in the instant case before the court, M.G. L.

ch. 266 section 57; M.G.L. ch. 266 section 30; M.G.L. ch. 195
section 6 (if applicable, as a civil statute); and M.G.L. ch.
268 section 1 (if applicable, as cited supra, there was no in-
dictment returned by any Grand Jury resting on this Massach-
usetts criminal statute), upon which the indictments, in the
case at bar before the court, entirely rests, "make unlawful a
substantial amount of constitutionally protected conduct" of the
petitioner's professional conduct in the "use of lower cost para-
legals".

66.   Thus, the Massachusetts state criminal statutes, as cited
supra, including M.G.L. ch.195 section 6 and M.G.L. ch.268 sec-
tion 1 (if applicable), "are facially invalid"as applied to the
petitioner's professional conduct in the practice of his profess-
ion as a licensed lawyer and in the same professional context as
a duly appointed fiduciary, in the instant case before the court,
because the petitioner, Palmer was engaged, in the context of his
professional conduct as a licensed lawyer, a "substantial amount
of constitutionally protected conduct.".

67.   The Massachusetts state court decisions, in the case at bar
before the court, are 'contrary to' clearly established federal
law as determined by the Supreme Court of the United States, and
within the meaning of 28 U.S.C.section 2254(d)(1), involving the
petitioner Palmer's professional conduct in the practice of his
profession as a licensed lawyer and in the same professional con-
text as a duly appointed fiduciary, in the context of the petit-
ioner's First Amendment rights and freedom, including petitioner's
First Amendment rights and freedom of association in petitioner's

practice of law as a licensed lawyer in petitioner's "use of
lower cost paralegals" in petioner's practice of law, as app-
licable through the Fifth Amendment and as applicable to the
states through the Fourteenth Amendments to the United States
Constitution.and clealry established federal law as determined
by the Supreme Court of the United States in Missouri v. Jenkins,
491 U.S. 274, 288, 109 S. Ct. 2463, 2471, 105 L.Ed.2d 229 (1989)
as cited and quoted in First Circuit  case in Lipsett v. Blanco,
975 F.2d 934 (1st Cir. 1992), and as cited supra herein.

68.    The petitioner asserts, as he did before the Massachusetts
Appeals Court, in petitioner's brief, that"he stands convicted of
"an act that the law does not make criminal." Davis v. United States,
417 U.S. 333, 346, 94 S. Ct. 2298, 2305, 41 L.Ed.2d 109 (1974).

69.    Also, the petitioner asserts the holding in Murray v. Carrier,
477 U.S. 478, 106 S. Ct. 2639, 2649, 91 L.Ed.2d 397, (1986) held,
"Accordingly, we think that in an extraordinary case, where a con-
stitutional violation has probably resulted in the conviction of
one who is actually innocent, a federal habeas court may grant the
writ even in the absence of a showing of cause for the procedural
default." In the case at bar, the petitioner asserts there was a
violation of petitioner's First Amendment rights and freedom in-
cluding the petitioner's First Amendment rights and freedom of ass-
ociation, in the petitioner's professional conduct in the practice
of his profession as a licensed lawyer and in the same professional
context as a duly appointed fiduciary, "use of lower cost para-
legals" as applicable through the Fifth Amendment and as applicable
to the states through the Fourteenth Amendments to the United States

—34 OF

Constitution and clearly established federal law as determined

by the Supreme Court of the United States in <u>Missouri</u> v. <u>Jenkins</u>,

491 U.S. 274, 288, 109 S. Ct. 2463, 2471, 105 L.Ed.2d 229 (1989),

and held in First Circuit case of <u>Lipsett</u> v. <u>Blanco</u>, 975 F.2d 934,939,

(1st Cir. 1992), held, "The <u>Supreme Court has given its blessing to</u>

<u>such a practice, stating</u>" "By <u>encouraging the use of lower cost</u>

<u>paralegals rather than</u> attorneys <u>wherever possible,</u> permitting

market-rate billing of paralegal hours encourages cost-effective

delivery of legal services and, by reducing the spiraling cost of

civil rights litigation, furthers the policies underlying civil

rights statutes." citing <u>Missouri</u> v. <u>Jenkins</u>, 491 U.S. 274, 288,

109 S. Ct. 2463, 2471, 105 L.Ed.2d 229 (1989)(citation and internal

quotation marks omitted). as cited supra, and quoted supra.

PREJUDICE

70.    As cited supra, the Supreme Court in <u>Williams</u> v. <u>Taylor</u>, 529

U.S. 369, 394 (2000) held. "In order to established prejudice the

petitioner need only show "a probability sufficient to undermine

confidence in the outcome."

71.    In the context of the petitioner's First Amendment rights and

freedom including the petitioner's First Amendment rights and free-

dom of association, as applicable through the Fifth Amendment and

as applicable to the states through the Fourteenth Amendments to

the United States Constitution, and clearly established federal

law as determined by the Supreme Court of the United States in

<u>Missouri</u> v. <u>Jenkins</u>, 491 U.S.274, 288, 109 S. Ct. 2463, 2471, 105

L.Ed.2d 229 (1989) and controlling First Circuit federal law, in

<u>Lipsett</u> v. <u>Blanco</u>, 975 F.2d 934, 939, (1st Cir.1992), both as cited

—35 of

supra herein, the Massachusetts state court decisions, including
the Massachusetts Appeals Court, as the last reason state court
decisions, as to petitioner's "use of lower cost paralegals" in
the course of the petitioner's professional conduct in the pra-
ctice of petitioner's practice of law as a licensed lawyer and in
the same professional context as a duly appointed fiduciary, was
prejudically to the petitioner, and as stated supra, 'contrary
to' clearly established federal law as determined by the Supreme
Court of the United States and within the meaning of 28 U.S.C.2254
(d)(1), in the case at bar before the court, and controlling First
Circuit federal law, as cited supra.

72. The Commonwealth seeks to turn the First Amendment on its
head, as to the petitioner's "use of lower cost paralegals" in the
petitioner's practice of law, as a licensed lawyer, strikes at the
heart of the petitioner's lawyering, in the case at bar before the
court, in denying the petitioner's constitutionally entitlement of
the constitutional protection of the First Amendment rights and
freedom including the petitioner's guaranteed First Amendment rights
and freedom of association in the "use of lower cost paralegals"
in the course of petitioner's practice of law, as applicable through
the Fifth Amendment and as applicable to the states through the
Fourteenth Amendments to the United States Constitution and clear-
established federal law as determined by the Supreme Court of the
United States in Missouri v. Jenkins. 491 U.S. 274, 288, 109 S. Ct.
2463, 2471, 105 L.Ed.2d 229 (1989) and controlling First Circuit
federal law in Lipsett v. Blanco, 975 F.2d 934, 939, (1st Cir. 1992),
in case at bar before the court.

—36  OF

73.  In Rolland V. Cellucci, 106 F. Supp2d 128, 144 (D. Mass
2000) held, "Regarding the three non-attorneys, the court is
mindful that "the efficient use of paralegals is, by now, an
accepted cost-saving device." citing Lipsett 975 F.2d at 939.

74.  The Supreme Court in Spevack v. Kline, 385 U.S. 511, 87 S. Ct.
625 (1967, held, "lawyers also enjoy first-class citizenship."
"Due Process of the Fifth Amendment forbids the Federal Govern-
ment to deny equal protection of the laws." See Bolling V. Sharpe
347 U.S. 497, 500, 74 S. Ct. 693, 98 L.Ed.884 (1954); Vance v.
Bradley. 440 U.S. 93, 94-95 n.1, 99 S. Ct. 939, 942 n.1, 59 L.Ed.
2d 171 (1979)

75.  "The equal protection of the laws is a more explicit safe-
guard of prohibited unfairness than "due process of law," and
therefore, we do not imply that the two are always interchang-
eable phrases." "But, as this court has recognized, discrimination
may be so unjustifiable as to be violative of due process. " Bo-
lling v. Sharpe. 347 U.S. 497, 74 S. Ct.693 (1954).

76.  Thus, in the context of the petitioner's First Amendment rights
and freedom in the "use of lower cost paralegals" holding in Miss-
ouri v. Jenkins, supra, and First Circuit holding in Lipsett v.
Blanco, supra, by the petitioner Palmer in the practice of his pro-
fession as a licensed lawyer, the Supreme Court, in Village of Hoff-
man, Est. v. Flipside Hoffman Est. 455 U.S. 489, 102 S. Ct.1186,
1192-1193, (1982) held, "Finally, perhaps the most important fac-
tor affecting the clarity the Constitution demands of a law is
whether it threatens to inhibit the exercise of constitutional

—— 37  OF

rights."

76.    Consistent with the petitioner's First Amendment rights
and freedom, including the petitioner's First Amendment rights
and freedom of association, in petitioner's practice of law, as
a licensed lawyer in petitioner's "use of lower cost paralegals"
pursuant to the crystal clear federal law, as determined by the
Supreme Court in <u>Missouri</u> v. <u>Jenkins</u> and the First Circuit hold-
ing in <u>Lipsett</u> v. <u>Blanco</u>, supra, and <u>Rolland</u> v. <u>Cellucci</u>, 106 F.
Supp 2d 128, 144 (D.Mass. 2000), supra, the Supreme Court, in
<u>Edwards</u> V. South Carolina, 371 U.S.229, 83 S. Ct. 680, 683, 9 L.
Ed. 697 (1963) and <u>NAACP</u> v. <u>Button</u>, 391 U.S. 415, 83 S. Ct.328
(1963) held, "It has long been established that these First Amend-
ment freedoms are protected by the Fourteenth Amendment from in-
vasion by the states."

77.    Thus, the 'statistical methodolgy' employed by the Common-
wealth in seeking to <u>criminalize</u> the professional conduct of the
petitioner Palmer's practice of his profession as a license law-
yer and in the same professional context as a duly appointed fid-
uciary, in the context of the petitioner's First Amendment rights
and freedom, including the petitioner's First Amendment rights
and freedom of association, as applicable through the Fifth Amen-
dment and as applicable to the states through the Fourteenth Amen-
dment to the United States Constitution, the Massachusetts state
court decisions, including the Massachusetts Appeals Court, the
last reason state court decision, are 'contrary to' clearly est-
ablished federal law as determined by the Supreme Court of the
United States and within the meaning of 28 U.S.C. 2254(d)(1), in

—38  of

in the instant case before the court.

78. "It makes no difference that the instant case was not a criminal prosecution and not based on a refusal to comply with a licensing requirement, The objectionable quality of vagueness and overbreath does not depend upon the absence of fair notice to a criminally accused or upon unchannled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." See National Ass'n for Advancement of Colored People v. Button, 371 U.S.415, 83 S. Ct.328, 9LE. 2d 405, (1963), cited supra.

79. Also, "For a state may not under the guise of prohibiting professional misconduct ignore constitutional rights." see N.A.A.P. v. Button, supra.

80. The Supreme Court in Rhodes v. Chapman, 452 U.S. 337, 346, 101 S. Ct. 2392, 2406, 69 L.Ed. 2d 59 (1981) held, "Justice Blackman, then serving on the Court of Appeals, set the tone in Jackson v. Bishop, 404 F.2d 571, 580 (8th Cir. 1968), "Human considerations and constitutional requirements are not to be measured, or limited by dollar....considerations..."

81. "Habeas is, "at its core, an equitable remedy." Schlup,513 U.S. at 319, and in the prosecution of the petitioner, in the context of the petitioner asserting his First Amendment rights and freedom, including First Amendment rights and freedom of association, in the case at bar, in the "use of lower cost paralegals" as determined by the Supreme Court of the United States in Missouri v. Jenkins, cited supra, and First Circuit holding in Lipsett v. Blanco, citing Missouri v. Jenkins, and Rolland v. Cellucci,

—39 of

supra, places the petitioner, in the instant case at bar before
the court, in a dilemma of constitutional magnatude, in the "use
of lower cost paralegals" and the Massachusetts criminal statutes
M.G.L.ch. 266 section 57: M.G.L.ch 266 section 30; M.G.L.ch,195
section 6 (if applicable) and M.G.L.ch. 268 section 1, upon which
the indictments against the petitioner entirely rests.

82.   As to the "use of lower cost paralegal" in the instant case
before the court,the petitioner asserted that in the context of
the petitioner's First Amendment rights and freedom including the
petitioner's First Amendment rights and freedom of association in
the "use of the lower cost paralegals" the petitioner addressed
the petitoner's professional conduct in the practice of his pro-
fession as a licensed lawyer and in the same professional context
as a duly appointed fiduciary, in the context of the constitut-
ional professional standard of conduct, and proof, as clearly est-
ablished in federal law as determined by the Supreme Court of the
United States in Strickland v.Washington, cited supra, and that
petitioner's professional conduct was not novel or emplausible,
but was permissible professional conduct, also with controlling
First Circuit federal law, based upon Strickland v.Washington, in
this motion before the court.

83.   The petitioner, in the case at bar asserted the "Chapman"
standard, (Chapman v. California, 386 U.S. 18, 87 S. Ct.824, 17
L.Ed. 2d 705 (1967), that applies to errors of constitutional
magnitude that are dicovered during direct (first) appeal. Under
the Chapman standard, the error is prejudical unless the error
was "Harmless beyound a reasonable doubt.

— 40 oF

84. The First Circuit in <u>Sanna</u> v. <u>Dipaolo</u>, 265 F.3d 1, (1st Cir. (Mass.)2001) held, "On direct appeal, a court confronted by a preserved constitutional error must set aside the judgment unless it is satisfied that the error was harmless beyound a reasonable doubt." citing <u>Chapman</u> v. <u>California</u>, 386 U.S.18, 24, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967). Also, the court held. "Although there is some disagreement as to whether the <u>Brecht</u> standard survies the passage of the AEDPA see <u>Hernandez</u> v. <u>Johnson</u>. 248 F.3d 344, 379 (5th 2000)(discussing opposing Viewpoints and citing cases), we have consistently employed Brecht in cases arising under the AEDPA, e.g., <u>Fortini</u>, 257 F.3d at 48-49; <u>Sustache-Rivera</u>, 221 F.3d at 18." "We reaffirm that praxis today and hold that the <u>Brecht</u> standard applies in conjunction with the AEDPA amendments."

85. Thus, the petitioner Palmer asserted, and does now, the "<u>Brecht</u>" standard (<u>Brecht</u> v. <u>Abrahmson</u>, 507 U.S. 619 (1993)) as a 'default" standard, in the petitioner Palmer's petition for habeas corpus, pursuant to 28 U.S.C. 2254, in the case at bar before the court, <u>and of course,in the within ~~using~~ Memorandum of Law</u>.

86. The petitioner relies for support ~~for this matter~~ on the accompanying Memorandum of Law, dated April 19, 2005 (consisting of (129) one-hundred and twenty-nine pages and petitioner's Affidavit, dated March 18, 2005 (consisting of (32) thirty-two pages.

87. The petitioner also relies for support for this ~~matter~~ on petitioner's Memorandum of Law dated February 14, 2005, and filed with this court on February 24, 2005.

— 41 of

IN THE CONTEXT OF PETITIONER'S FIRST AMENDMENT
RIGHTS AND FREEDOM, IN THE PRACTICE OF HIS PRO-
FESSION AS A LICENSED LAWYER,AND IN THAT CONTEXT,
PETITIONER'S "USE OF LOWER COST PARALEGALS, THE
MASSACHUSETTS CRIMINAL STATUTES,AS A MATTER OF
LAW, INVOLVING "ANY SYSTEM OF PRIOR RESTRAINTS OF
EXPRESSION COMES TO THIS COURT BEARING A HEAVY
PRESUMPTION AGAINST ITS CONSTITUTIONAL VALIDITY

88.In the context of the petitioner, Palmer's First Amendment
rights and freedom, including the petitioner's First Amendment
rights and freedom of association, in the "use of lower cost para-
legals" in the petitioner's professional conduct in practicing
his profession as a licensed lawyer and in the same professional
context as a duly appointed fiduciary, in the case at bar before
the court, and as applicable through the Fifth Amendment and as
applicable to the states through the Fourteenth Amendments to the
United States Constitution, and clearly established federal law
as determined by the Supreme Court of the United States  in Miss-
ouri v. Jenkins, 491 U.S. 274, 288, 109 S. Ct. 2463, 2471, 105 L.
Ed..2d 229 (1989), in which the"Supreme court has given its blessing
to such a practice, stating: "By encouraging the use of lower cost
paralegals rather than attorneys wherever possible, permitting mar-
ket-rate billing of paralegal rhours encourages cost-effective del-
ivery of legal services and, by reducing the spiraling cost of
civil rights litigation, furthers the policies underlying civil
rights statute." Lipsett v. Blanco, 975 F.2d 934 (1st Cir.1992), as
cited supra

89. Also, the 9th Circuit, as cited supra, in Pincay v. Andrews,
389 F3d 853 (9th Cir. (Cal.) 2004) held,"This appeal represents a
lawyer's nightmare. A sophisticated law firm, with what it thought

was a sophisticated system to determine and calendar filing dead-
lines, missed a critical one: the 30-day time period in which to
file a notice of appeal under Federal Rule of Appellate Procedure
4(a)(1)(A)."

90. "In the modern world of legal practice, the delegation of re-
petive legal tasks to paralegals has become a necessary fixture.
Such delegation has become an integral part of the struggle to
keep down the costs of legal representation. Moreover,the dele-
gation of such tasks to specialized, well-educated non-lawyers may
well ensure greater accuracy in meeting deadlines than a practice
of having each lawyer in a large firm calculate each filing dead-
line anew. The keeping track of necessary deadlines will involve
some delegation. The responsibility for the error falls on the
attorney regardless of whether the error was made by an attorney
or a paralegal." citing Model Rules of Prof'l Conduct R.5.5 cmt.
2 (2002) ("This Rule does not prohibit a lawyer from employing
the services of paraprofessionals and delegating functions to them,
so long as the lawyer supervises the delegated work and retains
responsibility for their work."). We hold that delegation of the
task of ascertaining the deadline was not per se inexcusable neg-
lect."    Pincay v.Andrews. supra.

91. The Supreme Judicial Court in Meyer v. Wagner, 429 Mass. 410
(1999), held, "Attorneys are required to handle their cases with
knowledge, skill and diligence, however, this does not mean that
they must be infalliable or that they must always secure optimum
outcome for their clients."

—43 OF

92.  In <u>Colucci</u> v.<u>Rosen, Goldberg, Slavet, Levenson & Wekstein,</u>
P.C., 25 Mass. App. 107 (1987), held, "...an attorney is <u>not</u>
liable for every mistake that may occur. An Attorney who act
with a proper degree of attention, reasonable case, and to the
best of his skill and knowledge will <u>not</u> be held for malpractice."
93.  The petitioner, Palmer asserts, in the case before the court,
the constitutional standard as formulated by the Supreme Court of
the United States in <u>Strickland</u> v.<u>Washington</u>, as cited supra and
controlling First Circuit federal law, based upon the constit-
utional standard of <u>Strickland</u>, as cited supra, as relates to
petitioner's <u>professional conduct</u> in the practice of his profess-
ion as a licensed lawyer and in the same professional context as
a duly appointed fiduciary, and in the context of the petitioner's
First Amendment rights and freedom including the petitioner's
First Amendment rights and freedom of association, in the "use of
lower cost paralegals" and the delegation of tasks, as cited
supra, as applicable through the Fifth Amendment and as applicable
to the states through the Fourteenth Amendment to the United States
Constitution, and clearly established federal law as determined by
the Supreme Court of the United States and controlling First Cir-
cuit federal law, in the instant case before the court.
94.  Thus, the Massachusetts criminal statutes, M.G.L.ch.266 sec-
tion 57; M.G.L. ch. 266 section 30; M.G.L. ch. 195 section 6 (if
applicable) and M.G.L.ch. 268 section 1 (if there is an indictment)
as applied to petitioner's delegation of tasks to paralegals is,
<u>not</u> in the context of the petitioner's professional conduct a

— 44  of

"prior restraint" as a matter of clearly established federal law
as determined by the Supreme Court of the United States in Missouri v. Jenkins, as cited supra and controlling First Circuit
federal law as held in Lipsett v. Blanco, 975 F.2d 934 (1st Cir.
1992), as cited supra.

95. The Supreme Court in Bantam Books, Inc. v.Sullivan (U.S.R.I.
1963), held, "Any system of prior restraints of expression comes
to this Court bearing a heavy presumption against its constitutional
validity." and cases cited in support, and reaffirmed in Forsyth
County, Ga. v. Nationalist Movement, 505.U.S.123, 112 S. Ct.2395,
120 L.Ed.2d 101 (1992). See also, Shuttlesworth v. City of Birmingham, Ala. 394 U.S. 147, 89 S. Ct.394, 22 L.Ed.2d 162 (1969); R.A.V.
v. City of St. Paul, Minn., 505 U.S. 377, 112 S. Ct. 2538 (1992).

96. The First Circuit in Fantasy Book Shop, Inc.,v.City of Boston,
652 F.2d 1115 (1st Cir. (Mass.) 1981), held, "Any government regulation that limits or conditions in advance the exercise of protected First Amendment activity constitutes a form of prior restraint, citing Southeastern Promotions, Ltd. V. Conrad, 420 U.S.546,
552-58, 95 S. Ct.1239, 1243-46,43 L.Ed.2d 448 (1976), and any such
restraint comes "bearing a heavy presumption against its constitutional validity". Id. at 558, 95 S. Ct. at 1246, quoting Bantam
Books, Inc. v Sullivan, 372 U.S.58, 70, 83 S. Ct. 631, 639, 9L.Ed.
2d 584 (1963). See New York Times Co. v. United states, 403 U.S.
713, 714, 91 S. Ct. 2140, 2141, 29 L.Ed.2d 822 (1971); Shuttlesworth v. Biringham, 394 U.S.147, 89 S. Ct. 935, 22 L.Ed.2d 162 (1969)."

97. See also, First Circuit Shannon v. Telco Communications, Inc

45 OF

824 F.2d 150 (1st Cir. (Mass.) 1987); hold that statute places
unconstitutional restriction on protected First Amendment activi-
ties, (as in the case at bar involving the petitioner's "use of
of lower cost paralegals") involving the Massachusetts Charitable
Solicitation Act limiting professional solicitor's compensation,
and Bellotti v. Telco Communications, Inc. 650 F.Supp.149 (D.Mass.
1986).

98. The First Circuit in National Ass'n of Social Workers v.Har-
wood, 69 F.ed622 (1st Cir.(R.I.) 1995) held, "raises issues of
constitutional magnitude" a factor that favors review notwith-
standing the procedural default." citing LaGuardia, 902 F.2d at
1013." See also. Quinn v. City of Boston, 325 F.3d 18, (1st Cir.
(Mass.)2003) held, "...issues of constitutional magnitude should
not be the subject of speculation but, rather, should be litigated
fully by the parties with standing to represent various pertinent
points of view."

99. This case at bar involves issues of constitutional magnitude
in the context of the petitioner's professional conduct in the pra-
ctice of his profession as a licensed lawyer and in the same prof-
essional context as a duly appointed fiduciary, in which the Mass-
achusetts criminal statutes upon which the indictment entirely rests
do not contain, in the context of the petitioner's First Amendmen-
ts rights of association, "prior restraints of the "use of lower
cost paralegals"  and thus the Massachusetts criminal statutes,
impermissible infringes on the petitioner's First Amendment rights
and freedom, as applicable through the Fifth Amendment and as app-
licable to the states through the Fourteenth Amendments to the

United States Constitution.. and clearly established federal
law. as determined by the Supreme Court of the United States.
and controlling First Circuit federal law, as the Massachusetts
criminal statutes do not constitute a "prior restraint" in the
petitioner's "use of lower cost paralegal°" and the delegation
by the petitioner in the course of his practice of law as a lic-
ensed lawyer and in the same professional context as a duly app-
ointed fiduciary, in the instant case before the court.

100. Thus, the Massachusetts court decisions are 'contrary to'
clearly established federal law as determined by the Supreme Court
of the United States and within the meaning of 28 U.S.C.2254(d)
(1), in the instant case at bar before the court.

101. This case at bar "raises issues of constitutional magnitude
which, if meritorious, could substantially affect" not only the
petitioner, Palmer, in the delegation and "use of lower cost
paralegals" in the practice of law, as relates to the Massach-
usetts criminal statutes unnarrowed, overly broad, impermissibly vague,
statutes, which inhibit, restrict petitioner's First Amendment
rights and freedom, including First Amendment rights and freedom
of association, as applicable through the Fifth Amendment and as
applicable to the states through the Fourteenth Amendments to the
United States Constitution, for all lawyers. in the delegation
of tasks to "lower costs paralegals", based upon the Massachusetts
criminal statutes, and the issue of substantial constitutional protected
professional conduct, under the governing constitutional profess-
ional governing standard in Strickland v. Washington, supra and
controlling First Circuit federal law., under Strickland v. Wash-

ington, 466 U.S. 668 (1984); Bell v. Cone, 535 U.S. 685 (2002);
Ouber v. Guarino, 293 F.3d 19, 25 (1st Cir.2002); Phoenix v. Mat-
esanz, 233 F.3d 77 (1st Cir. 2000); Castillo v. Matesanz, 348 F.3d
19, 25 (1st Cir.2002) (you can "always Monday-morning quarterback"),
as cited supra, in the context of the petitioner's habeas corpus
petition pursuant to 28 U.S.C. 2254, in the instant case involving
petitioner's professional conduct in the practice of his profession
as a licensed lawyer and in the same professional context as a duly
appointed fiduciary.

102. Based upon governing legal standards of professional conduct,
in the case at bar, petitioner asserts, he did not violate any
governing legal standard of professional conduct, as stated supra.
that was in violation of any Massachusetts criminal statutes, in
the context of the petitioner's First Amendments rights and freed-
om including petitioner's First Amendment rights and freedom of
association, as applicable through the Fifth Amendment and as
applicable to the states through the Fourteenth Amendments to the
United States Constitution.

## INDICTMENTS

103. The indictments, (as applicable) in the instant case before
the court as stated in above reference Memorandum of Law, dated
April 19, 2005, are entirely creatures of statutes, as the indic-
tments rest entirely on Massachusetts criminal statutes and/or
penal statutes M.G.L. ch. 266 section 57: M.G.L. ch. 266 section
30: M.G.L. ch. 195 section 6 (a civil statute lacking any mens rea
and criminal punishment provisions)) As to M.G.L.ch. 266 section
40 and M.G.L.ch. 268 section, there was no, none, indictment re-

— 48 oF

turned by any Grand Jury against the petitioner, Palmer, at
any time in petitioner's entire life.

104. The indictments as framed, are contrary to clearly established
federal law as determined by the Supreme Court of the United
States, and within the meaning of 28 U.S.C. 2254(d)(1), must be
vacated for want of jurisdiction to prosecute the alleged offenses,
as in violation of Massachusetts criminal statutes, as cited supra,
as the indictments do not include any, none, essential elements,
and facts, based upon clearly established federal law as determined
by the Supreme Court of the United States and as mandated in the
Grand Jury Clause of the Fifth Amendment to the United States Con-
stitution, all as reference in Memorandum of Law in support of this
motion.

### STATUTES

105. The Massachusetts criminal statutes, upon which the indictm-
ents entirely rests, are not narrowly tailored,are overly broad,
impermissible vague, and inhibit, restrict the petitioner's ex-
ercise of petitioner's guaranteed First Amendment rights and free-
dom including the petitioner's First Amendment rights and free-
dom of association, as applicable through the Fifth Amendment and
as applicable to the states through the Fourteenth Amendments to
the United States Constitution, in the petitioner's "use of low
cost paralegals" and delegation of tasks to low cost paralegals,
which involve the petitioner's professional conduct in the prac-
tice of his profession as a licensed lawyer and in the same prof-
essional context as a duly appointed fiduciary, and in the con-
text of the petitioner's First Amendment rights of association

— 49 oF

in the use of the low cost paralegals," in petitioner's practice

of law, and in that context, of petitioner's professional con-

duct, the Massachusetts criminal statutes do not serve a compell-

ing state interest. as applied to petitioner. in instant case.

106. These Massachusetts criminal statutes, lack any . do not

have any standards, as constitutional mandated, by clearly estab-

lished federal law as determined by the Supreme Court of the

United States.

107. Thus, the Massachusetts statutes, upon which the indictments

entirely rests are contrary to clearly established federal law,

as determined by the Supreme Court of the United States and within

the meaning of 28 U.S.C. 2254(d)(1) in this case at bar before

the court, and do not support the indictments in the instant case,

in the context of the petitioner's First Amendment rights and freedom.

108. The Massachusetts statutes, in this case at bar, as applied

to petitioner, in the context of the petitioner's professional

conduct in the practice of petitioner's profession as a licensed

lawyer and in the same professional context as a duly appointed

fiduciary, violated petitioner's First Amendment rights and free-

dom including petitioner's guaranteed First Amendment rights and

freedom of association, as applicable through the Fifth Amendment

and as applicable to the states through the Fourteenth Amendments

to the United States Constitution, and as applied to petitioner

are 'contrary to' clearly established federal law, as determined

by the Supreme Court of the United States and within the meaning

of 28 U.S.C. 2254(d)(1), in the instant case at bar before the

court.

109. Attached are certified copies of the indictments and copies

of the Massachusetts statutes, as applicable in the instant case.
See. Exhibits

— 50 oF

110.   Also, these Massachusetts criminal statutes, M.G.L.ch.266
section 57; M.G.L.ch. 266 section 30; M.G.L.ch. 195 section 6
(if applicable) and M.G.L. ch. 268 section 1 (no, none indictment
resting on this Massachusetts statute against Palmer), are in the
context of petitioner Palmer's First Amendment rights and free-
dom, including petitioner Palmer's First Amendment rights and
freedom of association, as applicable through the Fifth Amendment
and as applicable to the states through the Fourteenth Amendments
to the United States Constitution, and clearly established federal
law as determined by the Supreme Court of the United States, in
Palmer, the petitioner's professional conduct in the practice of
his profession as a licensed lawyer and in the same professional
context as a duly appointed fiduciary, in the case at bar before
the court, void for vaugness, and in violation of petitioner's
First Amendemtn rights and freedom, and other Massachusetts law-
yers, as applied to Palmer the petitioner, in the instant case,
as these Massachusetts statutes "make unlawful a substantial
amount of constitutionally protected conduct" of petitioner's
Palmer's professional conduct in the practice of law, as a lic-
ensed lawyer, in the "use of lower cost paralegals" and the dele-
gating of tasks to lower cost paralegals, in this case at bar,
as well as other professional conduct of the petitioner, in the
instant case at bar before the court.

111.   Thus, the Supreme Court in City of Houston, Texas v. Hill,
482 U.S. 451, 107 S. Ct. 2502, 2508, 96 L.Ed.2d 398 (1987), held,
"In the First Amendment context: "Criminal statutes must be
scrutinized with particular care; those that make unlawful a sub-

stantial amount of constitutionally protected conduct may be
held facially invalid even if they also have legitimate app-
lication." citing Kolender v. Lawson, 461 U.S. 352, at 359 n.8
as cited supra herein this motion.

112. See also, Kolender v. Lawson, 461 U.S. 352, as to the con-
stitutional requirement, as mandated by the Supreme Court, as to
standards, as the Massachusetts statutes, lack standards, and in
the context of the petitioner's First Amendment rights and freedom
as applicable through the Fifth Amendment and as applicable to
the states through the Fourteenth Amendments, to the United States
Constion, and clearly established federal law as determined by the
Supreme Court of the United States, in the case at bar before the
court, in the Commonwealth's prosecution of seeking to criminalize
the petitioner's professional conduct in the practice of petitioner's
profession as a licensed lawyer and in the same professional context
as a duly appointed fiduciary, as applied to petitioner Palmer, are
unconstitutional, and as applied to other lawyers, in the context
of a lawyers First Amendment rights and freedom in the "Use of low-
er cost paralegals" and the delegating of tasks to "lower cost
paralegals, and other professional conduct of the petitioner, in
the case at bar before the court. Massachusetts criminal statutes
in the instant case do not have any standards, as constitutionally
mandated in clearly established federal law, as determined by tne
Supreme Court of the United States.

113. "Well-intentioned prosecutors and judicial safeguards do not
neutralize the vice of a vague law." See Baggett v. Bullitt, 377
U.S. 360, 84 S. Ct. 1316 (1964).    See also, City of Houston, Tex.

— 52 oF

v. Hill, 482 U.S.451, 107, S,Ct. 2502, 96 L.Ed.2d 398 (1987),

supra; "Smith v. Goguen, 415 U.S.566, 575.

114. The Supreme Court in Gooding v. Wilson. 405 U.S. 518. 92

S. Ct. 1103 (1972) held, "Although a statute may be neither vague or

overbroad nor otherwise invalid as applied to the conduct charged

against a particular defendant, he is permitted to raise its vag-

ueness of unconstitutional overbreath as applied to others.  And

if the law is found deficient in one of these aspects, it may not

be applied to him either, until and unless a satisfactory limiting

construction is placed on the statute.  The statute, in effect is

stricken down on its face.  This result is deemed justified since

the otherwise continued existence of the statute in unnarrowed

form would tend to suppress constitutionally protected rights."

115. Thus, these Massachusetts criminal statutes, in the case at

bar before the court, are 'contrary to' clearly established fed-

eral law. as determined by the Supreme Court of the United States

and within the meaning of 28 U.S.C. section 2254(d)(1), as applied

to the petitioner Palmer, and other lawyers, and the Massachusetts

court decisions,. including the Massachusetts Appeals Court, in the

instant case at bar before the court are 'contrary to' clearly

established federal law as determined by the Supreme Court of the

United States, and within the meaning of 28 U.S.C.2254(d)(1), as

applied to the petitioner, Palmer.

116. Also, in the context of the petitioner Palmer's First Amend-

ment rights and freedom, including petitioner's First Amendment

rights and freedom of association, as applicable through the Fifth

Amendment and as applicable to the states through the Fourteenth

Amendments to the United States Constitution, anc clearly est-
ablished federal law, as determined by the Supreme Court of the
United States in the landmark case of Bouie v. City of Columbia,
378 U.S. 347, 84 S. Ct. 1697, 12 L.Ed.2d 894 (1964), held, "in
which the state court held, contrary to precedent, that the state
trespass law applied to black sit-in demonstrators who had consent
to enter private property but were then asked to leave, Relying
upon NAACP, we concluded that the South Carolina Supreme Court
interpretation of a state penal statute had impermissibly broaded
the scope of that statute beyound what a fair reading provided in
violation of due process." See 378 U.S. at 361-362, 84 S. Ct.1697.
117Thus, in the context of the petitioner's professional conduct
in the practice of his profession as a licensed lawyer and in the
same professional context as a duly appointed fiduciary, in the in-
stant case at bar before the court, and in the context of the petitioner's
First Amendment rights and freedom including the petitioner's First
Amendment rights and freedom of association, as applicable through
the Fifth Amendment and as applicable to the states through the
Fourteenth Amendments to the United States Constitution and clearly
established federal law as determined by the Supreme Court of the
United States In Missouri v. Jenkins, supra, and First Circuit
federal law in Lipsett v. Blanco, cited supra, and citing and
quoting Missouri v. Jenkins, as to "use of lower cost paralegals"
by lawyers in the context of lawyers professional practice of law,
and Rolland v. Cellucci, 106 F.Supp.2d 128 144 (D. Mass. 2000)
"use of lower cost paralegals" the Commonwealth in the prosecution
of the petitioner, in seeking to criminalize petitioner's prof-

essional conduct, inviolation of Massachusetts criminal statutes,
M.G.L. ch. 266 section 57; M.G.L. ch. 266 section 30; M.G.L.ch.
195 section 6 (if applicable) and M.G.L. ch. 268 section 1(if app-
licable (as no indictment ever returnedd by a Grand Jury against
the petitioner, Palmer)interpretation beyound what a permissible
fair reading reading in violation of petitioner's professional
conduct  in the practice of his profession as a licensed lawyer in
the use of petitioner's "lower cost paralegals" and other prof-
essional conduct, that was not in violation of Massachusetts crim-
inal statutes, base upon clearly established federal law, as det-
ermined by the Supreme Court of the United States and controlling
First Circuit federal law, in the instant case before the court.
118. As this court held in Goguen v. Smith, 343 F. Supp. 161 (D. Mass. 1972)
(Levin H. Campbell, District Judge), held, "An overly-broad and vague statute
permits selective law enforcement. It leaves open the standard of responsibility
so that it is easily susceptible to improper appliction." citing Gooding v.
Wilson, 405 U.S. 518, 92 S. Ct. 1103 at 1109, cited supra herein.
119. "Thus, "Criminal law, must not permit police, prosecutors and juries to
conduct" 'a standardless sweep...to pursue their personal predilections."
citing Kolender v. Lawson, 461 U.S. 352, at 358, 103 S. Ct.1855 (1993)(quot-
ing Smith v. Goguen, 415 U.S. 566, 94 S. Ct.1242, 39 L.Ed.2d 605 (1974)
(see Gougen v. Smith supra)
120  There was no, none standard either in the Massachusetts criminal statutes,
nor formulated by any Massachusetts court decisions 'contrary to' clearly
established federal law as determined by the Supreme Court of the United States
and within the meaning of 28 U.S.C .2254 (d)(1), in the instant case at bar
before the court, involving petitioner's professional conduct.

¶21   The Supreme Court in U.S. v. Batchelder, 442 U.S. 114, 99 S. Ct. 2198 n. 9, 60 L.Ed.2d 755 (1979) held, "The equal protection clause prohibits select enforcement "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Oyer v. Boles, 368 U.S. 448, 456, 82 S. Ct. 501, 506, 7 L.Ed. 446 (1962).  See also, Santa Fe Independent School Dist. v. Doe, 530 U.S. 290, 120 S. Ct.2266, 147 L.Ed. 295 (2000), held, "The Fourteenth Amendment imposes the First Amendment

substantial limitations on the legislative power of the states and their political subdivisions."

¶22   In Cooper v. Aaron, 358 U.S. 1, 78 S. Ct. 1401, 1409 (1958), held, "The command of the Fourteenth Amendment is that no "State shall deny to any person within its jurisdiction the equal protection of the laws." "A State acts by its legislature, its executive, or its judicial authorities." 'It can act in no other way."

¶23   In the case at bar before the court, the petitioner Palmer
asserts that the Massachusetts statutes, in the instant case,
M.G.L. ch. 266 section 57; M.G.L.ch. 266 section 30: M.G.L. ch.
195 section 6 (if applicable); M.G.L.ch. 268 section 1 (if app-
licable, as no, none indictment returned against petitioner, at
any time,resting on this Massachusetts statute)are facially over-
broad, as applied to petitioner's professional conduct in the prac-
tice of petitioner's profession as a licensed lawyer and in the
same professional context as a duly appointed fiduciary, in the
context of petitioner's First Amendment rights and freedom and
abridgement of petitioner's First Amendment associational rights
in the use, in the course of his practice of law as a licensed
lawyer, in the instant case, "lower cost paralegals" and the ass-
ingment by the petitioner to the lower cost paralegals, the tasks

— 56 of

relating to record keeping, bookkeeping, and reconcilation of
clients funds accounts, all ministerial tasks, for over (20)
twenty years, and the petitioner's total and complete reliance
upon the "lower cost paralegals" in performing those tasks, based
upon the petitioner's constitutional right, to the "use of lower
cost paralegals" as clearly determined by the Supreme Court of
the United States in Missouri v. Jenkins, as cited supra, and
First Circuit federal law, in Lipsett v. Blanco, 975 F.2d 934,939
(1st Cir. 1992). cited supra, and Rolland v.Cellucci, 106 F.Supp.2d
128, 144 (D. Mass. 2000). The Massachusetts statutes, in the in-
stant case are facially overbroad, as the Massachusetts statutes,
in the case at bar before the court as applied to petitioner's
professional conduct in the practice of his profession as a lic-
ensed lawyer and in the same professional context as a duly app-
ointed fiduciary are overely vague, overly broard, impermissible
vague, are not narrowly tailored to prohibit the petitioner Pal-
mer's "use of lower cost paralegals" in the context of petitioner's
practice of law, as is petitioner's constitutional right to the
"use of lower cost paralegals" in the course pf petitioner's pra-
ctice of law, as a licensed lawyer, and these Massachusetts stat-
utes, as applied to petitioner's professional conduct, in the in-
stant case provides no explict standards for enforcement, and vio-
lates the petitioner Palmer's First Amendment rights and freedom,
including Palmer's First Amendment rights and freedom of associa-
tion, as applicable through the Fifth Amendment and as applicable
to the states through the Fourteenth Amendment to the United States
Constitution.

124 "A statute violates due process if it is so vague that a
person of ordinary intelligence does not have a reasonable opp-
ortunity to know what is prohibited, and if the law provides no
explict standards for enforcement." Grayned¹·¹⁴.City of Rockford,
408 U.S. 104, 108, 92 S. Ct. 2294, 2298, 33 L.Ed.2d 222 (1972)

125 Thus, see recent First Circuit case of Planned Parenthood Of
Northern New England v. Heed (1st Cir. (N.H.) 2004)held, "Thus,
a physician cannot know whether his or her determination that a
minor's life is at risk will be judged according to a standard
(e.g.knowingly) that respects her good-faith medical assessment,
or by an objective standard (negligently) that would leave the
physician's judgment open to post hoc second guessing."

126 The Massachusetts criminal statutes, in which the indict-
ments, against the petitioner entirely rests, in the instant case,
are substantially overbroad, and facially overbroad, in the con-
text of petitioner's First Amendment rights and First Amendment
rights and freedom of association, as applicable through the Fifth
Amendment and as applicable to the states through the Fourteenth
Amendments to the Unitd States Constitution,and are 'contrary to'
clearly established federal law as determined by the Supreme Court
of the United States, and within the meaning of 28 U.S.C.2254(d)
(1), in the instant case at bar before the court., in the lack of
standards, in order that petitioner's professional judgment, at the
time was not in violation of the constitutional standards as for-
mulated by the Suprme Court of the United States in Strickland v.
Washington. and controlling First Circuit federal law, as cited
supra, as to professional conduct of petitioner practicing his pro-

fession as a licensed lawyer and in the same professional context
as a duly appointed fiduciary, in the case at bar before the court,
in second-guessing petitioner's professional judgment in hindsight.

127. The petitioner asserts, in these criminal proceedings he is
beset with second-guessers, in clear hindsight, as Monday-morning
quaterbackers, 'contrary to' clearly established federal law, as
determined by the Supreme Court of the United States and controlling
First Circuit federal law., in the context of petitioner's First
Amendment rights and freedom including petitioner's First Amendment
rights and freedom of association, as applicable through the Fifth
Amendment and as applicable to the States through the Fourteenth
Amendments to the United States Constitution, which this case at
.bar presents a dilemma of constitutional magnitude in the "use of
lower cost paralegals" in the practice of law to the petitioner
and other lawyers, in which the petitioner asserts that he was en-
gaged in substantial constitutionlly protected conduct, in the
practice of his profession as a licensed lawyer and in the same
professional context as a duly appointed fiduciary, and within the
meaning of 28 U.S.C. 2254(d)(1).

128 The Massachusetts statutes, in the instant case, are unconstit-
utionally overbroad, overely vagues impermissible vague, are not
narrowdly tailored to serve a compelling state interest. as applied
to petitioner's First Amendment rights and freedom including First
Amendment rights and freedom of association, in petitioner's pro-
fessional conduct in the practice of his profession as a licensed
lawyer and in the same professional context as a duly appointed
fiduciary, as applicable through the Fifth Amendment and as app-

licable to the States through the Fourteenth Amendments to the United States Constitution, and as applied to the petitioner, in practicing his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary,substantially overbroad and invalid on their face. See Houston v. Hill, 482 U.S. at 458, 107 S. Ct. 2502.

## JURY INSTRUCTION

12-9. "contrary to' clearly established federal law, as determined by the Supreme Court of the United States and within the meaning of 28 U.S.C. 2254(d)(1), in the instant case before the court, the trial judges charge to the ad hoc lay jury was uninstructive and left a wide-open option to members of the jury to decide the guilt or innocence of the petitioner, Palmer, professional conduct in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, based upon their own personal predilections and beliefs, as the trial judge did not provide the jury with any legal standard of profess- ional conduct, as constitutionally mandated, to measure under law, the professional conduct of the petitioner, Palmer, as to whether the petitioner's professional conduct, violated any governing legal standard, based upon clearly established federal law as determined by the Supreme Court of the United States in Strickland v. Washing- ton, as cited supra, and controlling First Circuit federal law, in support of the professional standard of conduct and proof in Strickland V. Washington, supra. that was in violation of the Mass- achusetts criminal statutes, M.G.L. ch. 266 section 57; M.G.L.ch. 266 section 30; M.G.L. 195 section 6, (if applicable); M.G.L ch. 268 section 1(if indictment returned by any Grand Jury).

$$\longleftarrow 60 \quad oF$$

### ELEMENTS

130 In the context of the petitioner's First Amendment rights
and freedom including the petitioner's First Amendment rigrs and
freedom of association, as applicable through the Fifth Amendment
and as applicable to the states through the Fourteenth Amendments
to the United States Constitution, and clearly established federal
law as determined by the Supreme Court of the United States, as
cited in petitioner's Memorandums of Laws as cited supra, in supp-
ort of this motion, the Supreme Court, with reference, in the case
at bar governing legal standard of petitioner's professional con-
duct in Strickland v. Washington, cited supra, the Supreme Court
in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781,(FN 16,),
61 L.Ed.2d 560, (1979) held, "The respondents have suggested that
this constitutional standard will invite intrusions upon the power
of the States to define criminal offenses. Quite to the contrary,
the standard must be applied with explicit reference to the sub-
tantive elements of the criminal offense as defined by state law..
Whether the State could constitutionally make the conduct at issue
criminal at all is, of course, a distinct question." citing Pap-
achristou v. Jacksonville, 405 U.S. 156, 92 S. Ct. 839, 31 L.Ed.2d
110; Robinson v. California, 370 U.S. 660, 82 S. Ct. 1417, 8 L.Ed.
2d 758."

13( Thus, in the context of the petitioner's professional conduct
in the practice of his profession as a licensed lawyer and in the
same professional context as a duly appointed fiduciary, in the
petitioner's substantially constitutionally protective conduct,
under the protection of the First Amendment, and the governing

legal standard of professional conduct, and proof, under Strick-
land ₩. Washington, in the instant case before the court, there
was not the slighest shred of evidence from one single sworn
witness, that the petitioner, Palmer, had the specific intention,
an essential element, of the Massachusetts criminal statutes,
M.G.L. 266 section 57 (Fiduciary Embezzlement)(6 Counts) and M.G.L.
ch. 266 section 30 (Larceny over $250)( 1 Count), to deprive any
person of their property, permately or otherwise.

132. As to Massachusetts General laws, ch. 266 section 57, See
Commonwealth v. Garrity, 43 Mass. App. Ct. 349 (1997), held,...
general intent was not what the Commonwealth was required to pro-
vide in this case, but rather that specific intent was required.

133. As to Massachusetts General Laws, ch. 266 section 30, see
Commonwealth v. Mills, 436 Mass. 387 (2002) citing Commonwealth
v. Donovan, 395 Mass. 20, 25-26 (1985), quoting Commonwealth v.
Johnson, 379 Mass. 177, 181 (1979), as to the essential element of
specific intent, as to the Massachusetts criminal statutes.

134. In Commonwealth v. Moreton, 48 Mass. App. 215 (1999), held,
"The trial judge did not include in his charge to the jury any in-
struction on specific intent, an essential element to support a
conviction of larceny under Massachusetts General Laws Chapter
266 Section 30 to prove the unlawful taking and carry away of the
personal property of another with the specific intent to deprive
the person of the property permantely." "To prove larceny, it is
e::        r t..
for the government to establish that (1) some thing was taken (and
in case of the precise offense charged here, that the item in ques-
tion had a value in excess of $250; (2) that the item parloined

was the property of another, and (3) that the defendant took it
with the specific intent to permantely deprive the victim of his
property." citing Commonwealth v. Johnson 379 Mass. 177, 181
(1979)." "A conviction may rest entirely upon circumstantial
evidence. but no essential element may rest on surmise, con-
jecture or guesswork, citng Commonwealth v. Donovan, 395 Mass.
20, 25 (1985)." cited supra.

135. Also, under Massachusetts law, "Knowledge is an essential
element of each crime." See Commonwealth v. Bennefeld, 373 Mass.
452, 367 N.E. 2d 832 (1977).

136. In the instant case at bar before the court, over the objec-
tion of the petitioner, the Massachusetts state court trial judge,
(in petitioner's written Request For Jury Instructions---see copy
as an Exhibit) charge the untrained ad hoc lay jury on general
intent, 'contrary to' clearly established federal law as determined
by the Supreme Court of the United States and within the meaning
of 28 U.S.C. 2254(d)(1), in the instant case at bar before the
court.

137. The Massachusetts state court trial judge also failed to give
petitioner's trial court attorney the opportunity to object to
the charge to the jury, and dismiss the jury before allowing the
petitioner's counsel to object to the trial court instruction, as
the petitioner did before the trial court judges charge to the
jury, and this assertion is supported by the Massachusetts state
court trial court transcript, involving the petitioner in the case
at bar before the court.

138. In the case at bar before the court, as the Supreme Court held 'in

— 63 of

Louisiana ex rel. Gremillion v. National Ass'n for the Adʜ̲anc-

ement of Colored People. 366 U.S. 293, 81 S. Ct. 1333, 6 L.Ed.2d

301 (1961), held, "We deal with a constitutional right, since

freedom of association is included in the bundle of First Amend-

ment rights made applicable to the States by the Due Process Clause

of the Fourteenth Amendment." and case cited.

13? The petitioner's knowledge in the instant case at bar before

the court, in the context of the petitioner's First Amendment rights

of association , as applicable through the Fifth Amendment and as

applicable to the States through the Fourteenth Amendments to the

United States Constitution, was based upon the total and complete

reliance upon the administrative lay staff of petitioner's law

office, the "low cost paralegals" as cited in the Supreme Court

case in Missouri v. Jenkins, 491 U.S. 274, 288, 109 S. Ct.2463,

2471 (1989) and as cited in Lipsett v. Blanco, 975 F.2d 934 (1st

Cir. 1992) and Rolland v.Cellucci, 106 F. Supp. 2d 128, 144 (D.Mass

2000), in matters relating to record keeping, bookkeeping and

client's funds reconcilation, for over (20) twenty years, and in

matters relating to accounting, tax return preperation, probate

accounting and reconcilation of clients funds accounts in relation

to those specific tasks, also for over (20) twenty years, (2) Two Certified
Public Accountants, supra,

(۱۶۰ The Supreme Court in the recent case involving the accounting

firm of Arthur Andersen in    Arthur Andersen LLP, Petitioner, v.

United States,____U.S.____, 125 S. Ct. 2129 (Westlaw 2005 WL126915),

held, "Only persons conscious of wrongdoing can be said to "Know⸱ ⸱

ingly..corruptly persuade." "And limiting criminality to persuaders

conscious of their wrongdoing sensibly allows section 1512(b) to
reach those with level of "culpability...we usually require in
order to impose criminal liability." citing United States v. Agui-
lar, 515 U.S., at 602, 115 S. Ct. 2357; see also, Liparota v.
United States, 471 U.S. 419, 426, 105 S. Ct.2084, 85 L.Ed.2d 434
(1985) " "The outer limits of this element need not be explored
here because the jury instructions at issue simply failed to con-
vey the requiste consciousness of wrongdoing. Indeed, it is strik-
ing how little culpability the instructions required.  For example,
the jury was told that "even if (petitioner) honestly and sincerely
believed that its conduct was lawful, you may find (petitioner)
guilty."

   141. Thus, as a matter of law, the petitioner's professional con-
duct in the practice or his profession as a licensed lawyer and in
the same professional context as a duly appointed fiduciary, and
in the context of the petitioner's First Amendment rights and free-
dom of association, as applicable through the Fifth Amendment and
as applicable to the states through the Fourteenth Amendments to
the United States Constitution, total and complete reliance upon
the "low cost paralegals" and Certified Public Accountants, was
not wrongdoing in violation of M.G.L. ch. 266 section 57; M.G.L.
ch. 266 section 30; M.G.L.ch. 195 section 6 (if applicable) and
M.G.L. ch. 268 section 1(no indictment as applicable to this stat-
ute), but was professional conduct that the constitutionally en-
titled the petitioner, to the protection of the First Amendment,
as petitioner was engaged in substantialy professional protected
conduct.

¶2. In the context of Petitioner's First Amendment rights of
association, and petitioner's "use of low cost paralegals" in
the practice of petitioner's practice of law as a licensed lawyer
in the instant case at bar, and constitutional professional
standard of professional conduct, and professional judgment,
under Strickland W. Washington, supra, there was no, Violation
of essential elements of specific intent and knowledge, in the
circumstances of petitioner's practice of law in petitioner's
total and complete reliance on the "low cost paralegals" and the
(2) two Certified Public Accountants, for over (20) twnnty years.,
in the instant case at bar before the court, as a matter of law
and of fact.

¶3. As the petitioner aserted on page 161 of page 179 (Petit-
ioner's Opposition To Respondents Motion To Dismiss petitioner's
petition for writ of habeas corpus pursuant to 28 U.S.C.2254,
dated February 14, 2005) the First Circuit precedent in U.S. v.
15 Bosworth Street (Mass) 236 F. 3d 50 (1st Cir. 2001) held,
"Trial lawyers pay attention to judges, and rightly so."
¶4. Howevver, the Supreme Court of the United States decision
and holding in Arthur Andersen LLP, Petitioner v. United States,
Decided May 31, 2005, is in the case at bar before the court,con-
sistent with the landmark case of U.S. v. Booker, 543 U.S.___, 125
S. Ct. 738___ L.Ed.2d (2005), which held, that "It is has been so
settled through out history that the Constitution protects every
criminal defendant 'against conviction except upon proof beyound
reasonable doubt of every fact necessary to constitute the crime

— 66 of

with which he is charged." citing <u>In re Winship</u>, 397 U.S. 358
364, 90 S. Ct. 1068, 25 L.Ed.2d 368 (1970)." "It is equally
clear that "the Constitution gives a criminal defendant the
right to demand a jury find him guilty of <u>all</u> the <u>elements</u> of
the crime with which he is charged." citing <u>United States</u> V.
<u>Gaudin</u>, 515 U.S. 506, 511, 115 S. Ct. 2310, 132 L.Ed.2d 444 (1995).
"These basic precepts, firmly rooted in the common law, have
provided the basis for recent decisions interpreting modern
criminal statutes and sentencing procedures."

   The petitioner Palmer in the instant case at bar was <u>not</u>
found guilty by the ad hoc lay jury of <u>all the essential elements</u>
of the crime for which he was charged, and in the context of  the
<u>First Amendment rights</u> and <u>freedom of association</u>, in the prac-
tice of his profession as a licensed lawyer and in the same prof-
essional context as a duly appointed fiduciary,because the Mass-
achusetts state court trial judge did <u>not</u> instruct the jury on all
the essential elements of specific intent and knowledge, which was
'contrary to' clearly established federal law, as determined by the
Supreme Court of the United States, as cited supra, and in support-
ing Memorandums of law, involving <u>errors of constitutional magnit-
ude</u> under the First, Fifth, Sixth and Fourteenth Amendments to the
United States Constitution, all to the <u>prejudice</u> and harm to the
petitioner, in the instant case before the court. Errors that deny
a defendant "the basic trial process" can never be harmless." See
<u>Sandstrom</u> v. <u>Montana</u>, 442 U.S.510, 99 S. Ct. 2450, 3106, n.6, 61
L.Ed.2d 39 (1979). The Sixth and Fourteenth Amendments clearly
establish the jury as an equally central entity. <u>Sandstrom</u> v. <u>Mon-
tana</u>, at 3106.

$\mathcal{E}_{\zeta}$

1↔6. It is difficult to image, in the instant case at bar before the court, a more fundamental or structural defect than allowing the jury to deliberate on an offense for which it had no, none, zero. definition of specific intent or any governing legal stan-
dard of the petitioner's professional conduct in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary. See Sullivan v. Louisiana, U.S. at 113, S. Ct. at 2083 deprivation of the "basic protection" of having a jury make the requiste finding of guilt "unquestionably qualifies as a "structural defect under Fulminante, 499 U.S.at 279, 111 S. Ct. at 1248. In effect the jury was free to convict the pet-itioner, Palmer, without finding that the Commonwealth proved any of the requiste elements of the offense, crime alleged, or govern-ing legal standards of professional conduct of petitioner's prof-essional conduct in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, that was in violation of the Massachusetts criminal stat-utes, upon which the indictments entirely rests. There is simply no way the ad hoc lay jury could judge the professional conduct of the petitioner, in context, without a trial court judge charge to the jury, on the petitioner's professional conduct under Strickland v. Washington, cited supra, and controlling First Circuit federal law on the petitioner's professional conduct and the proper definition of the essential elements, to determined whether the petitioner's professional conduct violated the Massachusetts criminal statutes, in the instant case

147. Thus, the Massachusetts state court decisions, committed errors

$-68$ of

of constitutional magnitude that are prejudicial to the pet-
itioner and were 'contrary to' clearly established federal
as determined by the Supreme Court of the United States and
within the meaning of 28 U.S.C. 2254(d)(1), in the instant case,
at bar before the court, and in the context of the petitioner's
First Amendment rigts and freedom, including the petitioner's
First Amendment rights and freedom of association, as applicable
through the Fifth Amendment and as applicable to the states here
through the Fourteenth Amendments to the United States Constit-
ution, and clearly established federal law  as determined by the
Supreme Court of the United States and controlling First Circuit
federal law, in which the petitioner asserts that he was engaged,
in substantial constitutional protected conduct, in his profess-
ional conduct, as a licensed lawyer and in the same professional
context as a duly appointed fiduciary, in the case at bar before
the court, under the protection of the First Amendment rights and
freedom of association, in the "use of lower cost paralegals" and
engagement of (2) two independent Certified Public Accountants, as
cited and described supra, for over (20) twenty years.

148.  There was imperfect information in the financial records of
both the clients funds accounts in the banks of deposit and the pet-
itioner's law office financial records, as the administrative lay
staff, the "lower cost paralegals" of petitioner's law office, did
not reconcile clients's funds for over (20) twenty years which
conduct reflects carelessness, rather than deliberate, intentioal
conduct, as the "lower cost paralegals" were simply too busy on
other matters in the law office to reconcile clients funds accounts,

— 69  OF

as stated in Exhibit 156 (trial)(court exhibit number) intro-
duced by both the Commonwealth and the petitioner, and which
is attached hereto and made a part of this motion before the
court.

149. Thus, the Supreme Court in Boyde v. California, 494 U.S.
370, 380, 110 S. Ct. 1190, 1198 (1990). held. "A jury instruction
is unconstitutional if there is a "reasonable likelihood that the
jury applied the challenged instruction in a way that prevents the
consideration of relevant evidence."

150. "It is an essential corollary of our reasonable-doubt stan-
dard in criminal proceedings that a conviction capital or other-
wise, cannot stand if the jury's verdict could have rested on
unconstitutional grounds." citing Stromberg v. California, 283
U.S. 359, 367-368, 51 S. Ct. 532, 535, 75 L.Ed.1117 (1931); Will-
iams v. North Carolina, 317 U.S. 287, 291-292, 63 S. Ct. 207, 209-
210, 87 L.Ed.279 (1942). "We emphasized that "the question...is
not what ~~the State Supreme Court declares the meaning of the~~
vharge to be, but rather what a reasonable juror could have under-
stood the charge as meaning." 471 U.S., at 315-316, 105 S. Ct., at
1971-1972 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct.
2450, 61 L.Ed.39 (1979). 442 U.S. at 516-517, 99 S. Ct. at 2455-2456 "
Boyde v. California. 494 U.S. 370, 110 S. Ct. 1190, 1204, 1202-
1203, 108 L.Ed.2d 316 (1990)."

151. Thus, the Supreme Court in Kelly v. South Carolina.____U.S.____,
122 S. Ct. 726, 733 (January 9, 2002) held, "A trial judges duty
is to give instructions sufficient to explain the law, an oblig-
ation that exists indepently of any question from the jurors or
any other indication of perlexity on their part." citing C f.,C.

Wright Federal Practice and Procedure Section 485, p.375 (3d 2000)("It is the duty of the trial judge to charge the jury on all essential questions of law, whether requested or not.") "Time after time appellate courts have found jury instructions to be insufficiently clear without any record that the jury manifested its confusion; one need look no further than Penry v. Johnson. 532 U.S. 782, 121 S. Ct. 1910, 150 L.Ed.2d 9 (2001) for a recent example."

COMMONWEALTH IGNORING <u>CONSTITUTIONAL</u>
PROFESSIONAL STANDARDS OF PROFESSIONAL
CONDUCT AND PETITIONER'S PERMISSIBLE
<u>PROFESSIONAL CONDUCT, UNDER LAW</u>

152. The Supreme Court in <u>Jones</u> v. <u>U.S.</u> 227, 119 S. Ct. 1215,1223, 143 L.Ed.311 (1999) held, "shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is <u>impermissibl</u>e under the Due Process clause." citing <u>Patterson</u> v. <u>New York</u>, 432 U.S.197, 97 S. Ct. 2319 (1997).

153 The Commonwealth's prosecution of the professional conduct of the petitioner practicing his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, based on "financial analysis","statistics," of bank records, <u>that</u> <u>were</u> <u>in-</u> <u>complete</u>, as the bank records were limited in both years (bank records available for (7) seven years only) and were never established to be true and accurate records, by not (1) one single <u>sworn</u> <u>witness</u>, nor <u>attested</u> by any bank, to be true and accurate, rather than, whether the petitioner violated any governing legal standard of professional conduct, as formulated by the Supreme Court of the United States

in Strickland v. Washington, cited supra, that was in viola-
tion of the Massachusetts criminal statutes, upon which the
indictments, in the instant case at bar before the court, en-
tirely rest.

154. In Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61
L.Ed.2d 39 (1979) held, "The Fourteenth Amendment to the United
States  Constitution prohibits any state from depriving a person
of liberty without due process of law, and in Mullaney v. Wilbur,
421 U.S. 684, 95 S. Ct.1881, 44 L.Ed.2d 508 (1975), held, this
court held that the Fourteenth Amendment's guarantees prohibit a
state from shifting to the defendant the burden of disproving the
element of the crime charged."

156. Thus the shifting of the burden of persuasion, in this case
at bar was 'contrary to' clearly established federal law as det-
ermined by the Supreme Court of the United States, and within the
meaning of 28 U.S.C. 2254(d)(1), and the Massachusetts court dec-
isions involve errors of constitutional magnitude, and are pre-
judicial to the petitioner, in the instant case at bar before the
court, in the petitioner's professional conduct in the practice
of his profession as a licensed lawyer and in the same profess-
ional context as a duly appointed fiduciary, and in violation of
the petitioner's First Amendment rights and freedom including the
petitioner's  First Amendment rights and freedom of association,
as applicable through the Fifth Amendment and as applicable to the
states through the Fourteenth Amendments to the United States Con-
stitution.

157. "no one may speculate as to the meaning of penal statutes"

citing United States v. Batchelder, 442 U.S. 114, 123 (1979),
quoting Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939),ambig-
uity must be resolved in favor of a defendant."

158. The Supreme Court in Fiore v. White. 531 U.S. 225, 121 S.
Ct. 712, 148 L.Ed.2d 629 (2001) held, that "a state cannot con-
sistent with the Due Process Clause convict a defendant for con-
duct that its criminal statute as properly interpreted, does not
prohibit." See Missouri v. Jenkins, 491 U.S. 274, 288, 109 S.
Ct. 2463, 2471, 105 L.Ed.2d 229 (1989) "use of lowers cost para-
legals" cited supra and Lipsett v. Blanco, 975 F.2d 934, 939 (1st
Cir. 1992), cited supra and Rolland v.Cellucci, 106 F. Supp.2d
128, 144 (D. Mass. 2000), and in the context of petitioner's
First Amendment rights of association, as applicable through the
Fifth Amendment and as applicable to the states through the Four-
teenth Amendments to the United States Constitution, as cited
supra,as to petitioner's professional conduct in the practice of
his profession as a licensed lawyer and in the same professional
context as a duly appointed fiduciary, in the instant case at
bar before the court.

159. As the Supreme Court in Smith v. Goguen, 415 U.S. 566, 94 S.
Ct. 1242, 39 L.Ed.2d 605 (1974) held. "This absence of any ascer-
tainable standard for inclusion and exclusion is precisely what
offends the Due Process Clause. The Massachusetts criminal statutes
in the case at bar, lack "any ascertainable standards" to govern
petitioner's professional conduct in the practice of his profession
as a licensed lawyer and in the same professional context as a duly
appointed fiduciary, and violate petitioner's Due Process constit-

utional rights. The Massachusetts court decisions are <u>standardless</u>
<u>judgments</u>, and are 'contrary to clearly established federal law
as determined by the Supreme Court of the United States and within
the meaning of 28 U.S.C.2254(d)(1), and involve errors of constit-
utional magnitude and prejudice to the petitioner Palmer, in the
instant case before the court, in the context of petitioner's First
Amendment rightsand freedom of association. in petitioner's prof-
essional conduct in the practice of his profession as a licensed
lawyer and in the same professional context as a duly appointed
fiduciary.

(bp. The indictments in the case at bar rests entirely upon M.G.L.
ch. 266 section 57; M.G.L.ch.266 section 30; M.G.L.ch. 195 section
6 (if applicable, as a civil statute) and M.G.L. ch.268 section 1
(if applicable as no indictment returened by any Grand Jury). Thus,
the Massachusetts court decisions are 'contrary to' clearly estab-
lished federal law, as determined by the Supreme Court of the Unied
States and within the meaning of 28 U.S.C. 2254(d)(1), as the Mass-
achusetts court decisions involves errors of constitutional mag-
nitude and prejudice to the petitioner Palmer, in the context of
petitioner Palmer's First Amendment rights and freedom of assoc-
iation in the practice of his profession as a licensed lawyer and
in the same professional context as a duly appointed fiduciary, as
stated supra,and with supporting legal authority of the Supreme
Court of the United States,and controlling First Circuit federal
law.  Also, see <u>City of Chicago</u> v. <u>Morales</u>,___ U.S.___, 119 S. Ct.
1849, 1858, 1859, (<u>June 10, 1999</u>), held, "..imprecise laws can be

attacked on their face under two different doctrines." "First,
the overbreath doctrine permits the facial invalidation of laws
that inhibit the exercise of First Amendment rights if the imper-
missible applications of the law are substantial when "judged in
relation to the statute's plainly legitimate sweep." citing Bro-
adrick v. Oklahoma, 413 U.S. 601, 612-615, 93 S. Ct.2908, 37 L.Ed.
830 (1973). Second, even if an enactment does not reach a substan-
tial amount of constitutionally protected conduct, it may be imper-
missibly vague because it fails to establish standards for the po-
lice and public that are sufficient to guard against arbitrary
deprivation of liberty interest." citing Kolender v. Lawson, 461
U.S. 352, 358, 103 S. Ct.1855, 75 L.Ed.2d 903 (1983).

{b}. In the instant case at bar before the court, the Massachusetts
statutes are facially invalid as applied to the petitioner, Palmer,
under both doctrines, as cited in City of Chicago v. Morales, supra,
and thus the Massachusetts court decisions involve errors of con-
stitutional magnitude and prejudice to petitioner "Palmer", as ex-
plained and cited with authority supra, and are 'contrary to' clearly
established federal law, as determined by the Supreme Court of the
United States and within the meaning of 28 U.S.C.2254(d)(1), in the
context of the petitioner, Palmer's First Amendment rights and free-
dom, including petitioner's First Amendment rights and freedom of
association, as applicable through the Fifth Amendment and as app-
licable to the states through the Fourteenth Amendments to the United
States Constitution, in petitioner's professional conduct in the
practice of his profession as a licensed lawyer and in the same pro-
fessional context as a duly appointed fiduciary.

## PERMITTED USE OF "LOWER COST PARALEGALS" IS
## NOT CRIMINAL PROFESSIONAL CONDUCT IN CONTEXT

162. The professional conduct of the petitioner, in the practice
of his profession as a licensed lawyer and in the same profess-
ional context as a duly appointed fiduciary, in the case at bar,
presents and places the petitioner, in a dilemma of constitutional
magnitude, as a matter of law, in petitioner's use, for over (20)
twenty years, in petitioner's assingment to "lower cost paralegals"
in the context of petitioner's First Amendment rights including
First Amendment rights of association, the tasks relating to re-
cord keeping, bookkeeping, and reconcilation of clients's funds'
accounts, in which the petitioner exercised his best professional
judgment at the time, consistent with the professional standard
in Strickland v . Washington cited supra, in the practice of law.

163. In Petitti v. New England Tel & Tel. Co., 909 F.2d 31 (1st Cir.
1990) held, "On appeal our role is not to second-guess the business
decisions of any employer, not to impose our subjective judgments
of which person would best fulfill the responsibilities of a cer-
tain job." citing Rossy v.Roche Products, 880 F.2d.621,625 (1st
Cir. 1989).

164. Petitioner asserts, that he had every reason to believe in
his total and complete reliance in the (2) two Certified Public
Accountants, in the instant case at bar, for over (20) twenty
years, James Argus of the accounting firm of Argus & Freedman
and Norman Freedman of the same accounting firm, and later of
the accountig firm of Zuber & Freedman, in matters relating to
accounting, tax return preparation, probate accounting and
reconcilation of clients' funds accounts in relation to those
specific tasks.

— 76 of

165. The Massachusetts state courts decisions, in the instant case are 'contrary to' clearly established federal law as determined by the Supreme Court of the United States and within the meaning of 28 U.S.C. 2254(d)(1).  The Supreme Court on <u>June 29,</u> <u>2004</u>, in <u>Ashcroft</u> v. <u>American Civil Liberties Union</u>,___U.S___ , 124 S. Ct. 2783 held, "Content-based prohibitions, enforced by severe criminal penalities, have a constant potential to be a repressive force in the lives and thoughts of a free people." Any regulation on specifc kinds of expression is presumptively unconstitutional under the First Amendment unless the government is able to prove otherwise."

166. In the case at bar before the court, the Massachusetts state court decisions involve errors of constlitutional magnitude and . <u>prjudice</u> to the petitioner Palmer in petitioner's professional conduct in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary as stated and cited supra herein.  See also, <u>National Ass'n of</u> <u>Social Workers</u> v. <u>Harwood</u>, 69 F.3d 622 (1st Cir. (R.I.)1995) cited supra.

167 Thus, the Massachusetts state court decisions, in the case at bar violate petitioner's First Amendment rights and freedom, including the petitioner's First Amendment rights and freedom of association, as applicable through the Fifth Amendment and as applicable to the states through the Fourteenth Amendments to the United States Constitlution and clearly established federal law, as determined by the Supreme Court of the United States, as petitioner, <u>was at all times,</u> engaged in constitutionally substantial protected professional in the practice of law, as a licensed lawyer. See <u>Missouri</u> ✕ <u>Jenkins</u>, 491 U.S. 274, 288, 109 S. Ct. 2463, 2471 (1989); <u>Houston</u> v. <u>Hill</u>, 482 U.S.451, 107 S. Ct.2502 (1987).

DELAY BY <u>CONFISCATION</u> OF PETITIONER'S
LEGAL MATERIAL BY MASSACHUSETTS DEPARTMENT
CORRECTIONAL OFFICERS IN DENIAL OF PETITIONER'S
ACCESS TO COURTS, ALL TO THE PREJUDICE AND
HARM TO PETITIONER, AND IN VIOLATION OF PET-
ITITONER'S CONSTITUTIONAL RIGHTS OF ACCESS TO
COURT'S

168. On November 24, 2004, the petitioner, Palmer, caused to
have a habeas corpus petition, pursuant to 28 U.S.C. 2254, filed
in the United States District Court For The District of Mass-
achusetts, a period of over (5) five years, since the petitioner
was convicted on November 4, 1999, in the State of Massachusetts
Suffolk County Superior Court, and in which the petitioner has
to date, been held in physical custody, in the Commonwealth of
Massachusetts Department of Corrections, as a state prisoner,
at the Massachusetts Correctional Institute, at Concord, Massach-
usetts, Bay State Correctional Center, located at Norfolk, Mass-
achusettts, Massachusetts Norfolk Correctional Institute at Nor-
folk, Massachusetts and since September 1, 2004, at Souza-Bara-
nowski Correctional Center, P.O. Box 8000, Shirley, Massachusetts,
and <u>continuing to date</u>.

169. As a pro se litigant, and state of Massachusetts prisoner
at Bay State CorrrectionaL Center, the petitioner's legal mat-
erial, consisting of petitioner's legal mail, trial court trans-
cripts, legal research, in the above entitled case at bar before
the court was confiscated by Correctioapl Officers, ((4) four
times), from petitioner's room, Bay State Correctional Center,
and petitioner's was deny access to the legal material, in order
that petitioner could have access to the courts, because the pet-

itioner's legal material exceeded (1) one square cubic feet
of legal material.

¶70. At Souza-Baranowski Correctional Center, the petitioner's
legal material was again confiscated, by correctional officers
for the Fifth time, because the petitioner's legal material
exceeded (1) one square foot of legal material.

¶71. The petitioner's trial court transcripts exceed (1) one
square foot, alone, and without the benefit of legal research
material necessary to prepare legal pleadings and briefs for the
court.

¶72. Attach as Exhibits are documentary evidence of the confis-
cation of petitioner's legal material, which to state, as a matter
of law, places an undue burden on petitioner in access to court,
as the petitioner is unable to file with the court, as a pro se
litigant, legal pleadings and briefs without reference to legal
material, consisting of legal research, trial court transcripts
and legal mail, all of which is presently being held by the Mass-
achusetts Department of Correction at Souza-Baranowski Correctional
Center, based soley on the pretext that the petitioner's legal
material cannot exceed one(1) square cubic feet, all in violation
of petitioner's ability to access to the court's with proper legal
pleadings and briefs.  The petitioner's is by education, training,
experience and inclination a trial lawyer, and practice his prof-
ession as a licensed lawyer in the courts, both state and federal,
for over (40) forty years.  It is simply impossible to prepare leg-
al documents for the court, in the above entitled case within the

restriction of (1) one cubic foot, and the petitioner, has filed with Michael Corsini, pleading, under 42 U.S.C. 1983, (Michael Corsini, Supertindent of Bay State Correctional Center) (Verified Complaint, Memorandum of Law, Affidavit) and was transferred to another prison before had the opportunity to file legal pleading with the court.

173. The Property Department Sgt. Steven Orman, informed the petitioner he could not access his legal material in legal storage and even informed the petitoner not to accept any further legal mail as it would exceed the (1) one square foot of permissible legal material, all to the great damage and prejudice to the petitioner. (Sgt. Orman is at Bay State Correctional Center).

174. The petitioner has requested that he needs to access his legal material in legal storage, and needs (3) three to (4) four hours to examine the (15) fifteen boxes that contain legal material beyound the (20) twenty minutes allowed once a week. To date petitioner's request has been ignored.

175. Petitioner's typewriter tapes have been held from him for over a month (petitioner paid for the typewriter tapes)

176. The petitioner was born September 16, 1928 (age 76 years old, soon to be 77 years old) and the Massachusetts Department of Correction has engaged in a pattern of simply stonewalling petitioner' s access to his legal material and access to the courts, without any justification. "Justice delayed is justice denied."

177 Delays are in our judicial system in appeal, but a delay of over (5) five years to file a habeas corpus petition because of the conduct of Correctional Officers in confiscating the petitioner's

— 80 oF

legal material, simply because the legal material exceeds (1)
one square cubic foot, is in my humble opinion, a violation of
the petitioner's constitutional rights of due process and vio-
lation of the First, Fourth, Fifth, Sixth, and Eighth Fourtheenth Amendments to
the United States Constitution and clearly established federal
law as determined by the Supreme Court of the UNited States.

178, In U.S. v. Perez, 46 F. Supp. 2d 59, 65 (D. Mass. 1999)
(Gertner, District Judge) held, "As was pointed out in Ready:
"Once a system of appellate court is put into place...a criminal
defendant's ability to appeal may not be unduly burdened." 82 F.3d
at 554 (citing North Carolina v. Pearce, 395 U.S. 711, 724, 89 S.
Ct.2072, 23 L.Ed.2d 656 (1969), overruled on other grounds by Ala-
bama v. Smith, 490 U.S. 794, 802, 109 S. Ct. 22101,104 L.Ed.2d 865
(1989), and Griffin v. Illinois, 351 U.S. 12, 76 S. Ct.585, 100
L.Ed. 891 (1956). " "Indeed, again as noted by Judge Parker, the
doctrine of unconstitutional conditions, can apply to this kind of
statutory rights; once the right is given, the government has a
constitutional duty to allow unfettered and equal access to it."
citng Melancon, 972 F.2d at 577 (concurrence) (citing Griffin
for the proposition that the government has a duty not to limit
access to a statutorily created right of direct appeal in a crimin-
al case."

179. The Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.
Ct. 2963, 41 L.Ed. 2d 935 (1974) held,"Prison walls do not separate
inmates from the protection of the Constitution." "Prisoners en-
joy the protection of due process." See also, Turner v. Safley,
482 U.S. 78, 96 L.Ed.2d 64 (1987);Haines v. Kerner, 404 U.S.510 (1972).

180. In Bounds v Smith. 430 U.S. 817. 97 S. Ct.1491. 52 L.Ed. 2d 72 (1977), the Supreme Court of the United States for the first time squarely held that the right of access to courts is so fundamental that prison officials are under an affirmative obligation to insure that right.

181. "When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." See Johnson v. Avery, 393 U.S. 483, 486, 89 S. Ct. 747, 749, 21 L.Ed.2d 718 (196  ) Procunier V.Martinez, 416 U.S. 396, 94 S. Ct.1800 (1974).

182 The right of access to courts is derived from due process clause, privileges and immunities clause, and First Amendment, See United States Constitution Art. 4, Section 2, cl.1,and United States Constitutional Amendments (1) one, (5th) Fifth and (14th) Fourteenth. In Simmons V. Dickhaut, 804 F.2d 182 (1st Cir.1986) (per Curiam),(Before Coffin, Bownes and Breyer, Circuit Judges), held, "The right of access is a discrete, constitutional right, derived from various constitutional sources. It springs in part from the due process clause, Wolff v. McDonnell, 418 U.S.539, 579, 94 S. Ct.2963, 2986, 41 L.Ed.2d 935 (1974); the privileges and immunities clause, Chambers v. Baltimore & Ohio Railroad, 207 U.S. 142, 148, 28 S, St.34, 35, 52 L.Ed.143 (1907); and the First Amen- dment, California Motor Transport Co.,V. Trucking Unlimited, 404 U.S. 508, 513, 92 S. Ct. 609, 613, 30 L.Ed.2d 642 (1972)." "See generally Ryland V. Shapiro, 708 F.2d 967, 971-72 (5th Cir.1983). The right of access is fundamental Bounds V. Smith, 430 U.S. 817, 828, 97 S. Ct.1491, 1498, 52 L.Ed.2d 72 (1977). "Meaningfull acc- ess" to the courts is the touchstone." See Ross V. Moffitt, 417 U.S. 600, 94 S. Ct. 2437, 41 L.Ed.2d 341 (1974)."

¶83 See also, Denson v. Marshall, 59 F.Supp.2d 156, 158 (1st Cir. 1999); Leacock v. Dubois, 974 F. Supp. 60 (1st Cir. 1970), "Nor can a prison regulation impede on an inmates constitutional rights unless it be clearly demonstrated that a rational and justifiable relationship between the policy and a legitimate penological governmental interest exists.  If the policy does not further a governmental interest the regulation must fail." See Shaw v. Murphy, 532 U.S. 223, 121 S. Ct. 1475, 149 L.Ed.2d 420 (2001), Pennsylvania Department of Corr. v. Yeskey, 524 U.S. 206, 118 S. Ct. 141 L.Ed.2d 215 (1998).

¶84. Thus, the petitioner, Palmer asserts, that regulation 103 CMR 403.10, (the regulation limiting inmate to (1) one square cubic foot of legal material ) as applied to petitioner, in the instant case at bar before the court, as a pro se litigant, is unconstitutional  and in violation of petitioner's constitutional rights under the First, Fourth, Fifth, Eight, and Fourteenth Amendments to the United States Constitution, and clearly established federal law as determined by the Supreme Court of the United States and controlling First Circuit federal law, as the regulation does not comport with petitioner's constitutional rights of due process,in justifying the confiscation of petitioner's legal material, in preventing the petitioner from having access to the court, for his appeal of the Commonwealth of Massachusetts state court conviction on November 4, 1999, at the Massachusetts state court, at Suffolk County Superior Court, Boston, Massachusetts. Attach hereto is a copy of regulation 103 CMR 403.10, which is incorporated herein and made a part, by reference and marked as Exhibit.

citing Bordenkircher ↓. Hayes, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L.Ed.2d 604 (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 32-33, n.20, 93 S. Ct.1977, 1986,n.20, 36 L.Ed.2d 714.).

See copy of regulation on typewriter ribbons.

190. At age (soon to be 77years old on September 16, 2005) 76 years old, to state the obvious, the petitioner Palmer is prejudice by the unconstitutional practice and rules of the Commonwealth of Massachusetts Correctional Department, as applied to petitioner's constitutional rights,as described, and with legal authority, supra.

191. As the Supreme Court in INS ↓.Chada, 462 U.S. 919, 944, 103 S. Ct. 2764, 2781, 77 L.Ed.2d (1983) held, "Regardless "the fact that a given law or procedure is efficient, convenient, and useful in faciliting functions of government, standing alone, will not save it if it is contrary to the Constitution."

192. In petitioner's access to courts see Supreme Court, Christopher ↓. Harbury,____ U.S.____, 122 S. Ct.2179, 2186 n.12 (June 20, 2002), and Simmons ↓. Dickhout, supra.804 F.2d 182 (1st Cir. 1986), as applied to petitioner Palmer, in the case at bar before the court.

193. In view of the practice and procedure of the Massachusetts Department of Corrections, as applied to petitioner, the above case has simply dragged on too long, all to the prejudice and harm to the petitioner, whichspractice and procedures, are unconstitutional and in violation of petitioner's constitutional rights as cited supra.

## SENTENCE

194. There is presently on file with the court, in the above en-

— 85 oF

titled case, a motion, Memorandum of Law, and Affidavit by
the petitioner, as to the unlawful and unconstitutional sen-
tence, imposed by the trial judge only on November 5, 1999,
after dismissing and discharging the jury on November 4, 1999,
in violation of the petitioner Walter E. Palmer's Sixth Amen-
dment constitutional rights, as held, in the landmark Supreme
Court case of U.S. v. Booker 543 U.S. 125 S. Ct. 738 decided
on January 12, 2005, and citing in support, other Supreme Court
cases, as cited by the petitioner *, in petitioner's Further
Application For Review to the Supreme Judicial Court, citing
Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct.2348, 147 L.Ed.
435 (2000), in this direct appeal before the court.

> HALING PETITIONER INTO COURT ON A CHARGE,
> FEDERAL LAW REQUIRES THAT A CONVICTION ON
> THAT CHARGES BE SET ASIDE, IN CONTEXT OF
> PETITIONER'S FIRST AMENDMENT RIGHTS AND FREEDOM
> IN THE CONTEXT OF PETITIONER'S PROFESSIONAL CONDUCT
> IN THE PRACTICE OF HIS PROFESSION AS A LICENSED
> LAWYER AND IN THE SAME PROFESSIONAL CONTEXT AS A
> DULY APPOINTED FIDUCIARY

195.    The Supreme Court in Menna v. New York, 423 U.S. 61, 96
S. Ct.241, 46 L.Ed.2d 195 (1975)(PER CURIAM) held, that, "Where
the State is precluded by the United States Constitution from
haling a defendant into court on a charge, federal law requires
that a conviction on that charge be set aside even if the con-
viction was entered pursuant to counseled plea of guilty." cit-
ing Blackledge v. Perry, 417 U.S. 21, 30, 94 S. Ct.2098, 2103,
40 L.Ed.2d 628 (1974).

196     In the case at bar, the Massachusetts criminal statutes,
M.G.L. ch. 266 section 57; M.G.L. ch. 266 section 30; M.G.L.ch.

195 section 6 (a civil statute that lacks a mens rea and
punishment) and if applicable M.G.L. ch. 268 section 1(as
no indictment returned by any Grand Jury against the petitioner
resting upon this Massachusetts statute, as statued supra)
these statues lack any, none, zero, standard, as constitutional
mandated by clearly established federal law, as determined by the
Supreme Court of the United States.

¶97   Thus, the Massachusetts court decisions are 'contrary to'
clearly established federal law as determined by the Supreme
Court of the United States and within the meaning of 28 U.S.C.
2254(d)(1), and involve errors of constitutional magitude, as
to petitioner's First Amendment rights and freedom, including
petitioner's First Amendment rights and freedom of association
as applicable through the Fifth Amendment and as applicable to
the states thorugh the Fourteenth Amendments to the United
States Constitution, as "Criminal law, must not permit police,
prosecutors and juries to conduct"'a standardless sweep...to
pursue their personal predilections." citing Kolender v.Lawson,
461 U.S. 566, 94 S. Ct. 1242, 39 L.Ed.2d 605 (1974).  See also,
Goguen v. Smith, 343 F. Supp. 161 (D.Mass. 1972) held,, "An
overly-broad and vague statute permits selective law enforcement.
It leaves open the standard of responsibility so that it is
easily susceptible to improper application." citing Gooding v.
Wilson, 405 U.S. 518, 92 S. Ct. 1103 at 1109.

¶98  The Massachusetts court decisions, in the case at bar before
the court, involve a 'standardless   sweep in which the Common-
wealth, in the prosecution of Palmer, in the practice of his profe-
ssion as a licensed lawyer, and in the same professional context

—87  of

as a duly appointed fiduciary, and in the same professional

context as a duly appointed fiduciary, and in the context of

the petitioner's First Amendment rights and freedom including

petitioner's guaranteed First Amendment rights and freedom of

association, as applicable through the Fifth Amendment and as appl na

applicable to the states through the Fourteenth Amendments to the

United States Constitution, are 'contrary to' clearly established

federal law, as determined by the Supreme Court of the United

States and within the meaning of 28 U.S.C.2254, as the Massach-

usetts court decisions also, involve errors of constitutional

magnitude, and prejudice to the petitioner, as the Massachusetts

criminal statutes as cited, as constitutionally mandated lack,

do not have any standards, as cited supra, See also, City of

Chicago v. Morales, 527 U.S. 41, 119 S. Ct. 1849 (1999). Thus,

the Massachusetts criminal statutes, as cited supra, violate,

in this case at bar petitioner's First Amendment rights and

freedom in the exercise of petitioner's First Amendment rights

in the petitioner use of lower cost paralegals, in the practice

of petitioner's practice of his profession as a licensed lawyer

as cited and clearly held, as to petitioner's First Amendment

constitutionall right in Missouri v. Jenkins, 491 U.S. 274, 288,

109 S. Ct. 2463, 2471, 105 L.Ed.2d 229 (1989), and controlling

First Circuit federal law, in Lipsett v. Blanco, 975 F.2d 934,

939, (1st Cir. 1992), citing Missouri v. Jenkins, supra and

Rolland v. Cellucci, 106 F. Supp. 2d 128, 144 (D. Mass. 2000),

cited supra.

[99 Thus, in violation of petitioner's First Amendments rights

—88 OF

in the case at bar before the court, the Supreme Court of the
United States in <u>Blackledge</u> ⇓. <u>Parry</u>. 417 U.S. 21. 94 S. Ct. 2098.
40 L.Ed.2d 628 (1974). held. "...the right <u>not</u> to be haled into
court at all upon the felony charge. The very initiation of the
proceedings against him in the Superior Court thus operated to
deny him due process of Law."

2.00    The Supreme Court. in <u>Fiore</u> ⇓. <u>White</u>, 531 U.S. 225, 121 S. Ct.
712, 148 L.Ed.2d 629 (2001) held, in a crystal clear holding, that
"a state cannot consistent with Due Process Clause convict a def-
endant for <u>conduct</u> that its criminal statute as properly inter-
preted. <u>does not prohibit</u>.". and as cited by petitioner in pet-
itioner's "Application For Further Appellate Review" dated Dec-
ember 12, 2003, before the Supreme Judicial Court, and again, as
cited before the Massachusetts Appeals Court, the petitioner's
First Amendment constitutional right, of the use of lower cost
paralegals, in petitioner's practice of his profession as a lic-
ensed lawyer, and in the same professional context, as a duly app-
ointed fiduciary, as held by the Supreme Court of the United States
In <u>Missouri</u> ⇓. <u>Jenkins</u>, 491 U.S. 274, 109 S. Ct. 2463, 2471, 105
L.Ed.2d 229 (1989), and held by the First Circuit in <u>Lipsett</u> v.
<u>Blanco</u>, 975 F.2d 934 (1st Cir.1992) and <u>Rolland</u> ⇓. <u>Cellucci</u>, 106
F. Supp.2d 128, 144 (D. Mass. 2000), for over (20) twenty years.
2.01    Petitioner, in the instant case at bar, asserts, he has the
right, not to be haled into court, based upon the lack of any
standards as constitutionally mandated, in the Massachusetts crim-
inal statutes, upon which the indictments entirely rests, and in
violation of petitioner's <u>First Amendments rights and freedom of
association</u>, as applicable through the Fifth Amendment and as app-

—89 of

licable to the states through the Fourteenth Amendments to the
United States Constitution, and clearly established federal law,
as determined by the Supreme Court of the United States, as cited
supra.  See Menna v. New York, 423 U.S. 61, 96 S. Ct. 241, as citd
supra, and U.S.v.Batchelder, 442 U.S. 114, 99 S. Ct. 2198 n.9,
60 L.Ed.2d 755 (1979), cited supra.

  2.02  In support of petitioner's professional conduct in the practice
od his profession as a licensed lawyer and in the same professional
context as a duly appointed fiduciary, at Massachusetts Appeals
Court , the constitutional standard of professional conduct and
proof, the Supreme Court in Bell v Cone, 535 U.S. 685, 122 S. Ct.
152 L.Ed.2d 914 (2002) held, "We cautioned in Strickland (Strickland
v Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)),
that a court must indulge a "strong presumption" that counsel's con-
duct falls within the wide range of reasonable professional assis-
tance because it is all too easy to conclude that a particular act
or omission of counsel was unreasonable in the harsh light of hind-
sight."  466 U.S. at 689, 104 S. Ct. 2052." as cited supra. Thus.
as stated  Bell v. Cone, supra held, "As we stated in Williams, sec-
tion 2254(d)(1)'s "contrary to" and "Unreasonable application" clauses
have independent meaning. 529 U.S., at 404-405, 120 S. Ct. 1495. A
federal habeas court may issue the writ under the "contrary to "
clause if the state court applies a rule different from the gover-
ning law set forth in our cases, or if it decides a case differently
than we have done on a set of materially indistinguishable facts."
Id. at 405-406, 120 S. Ct. 1495."

  2.03  Thus, consistent with the Supreme Court holding in Baldwin

—90 oF

Reese, 541 U.S. 27 , 124 S. Ct. 1347, 158 L.Ed.2d 64 (decided
March 2, 2004), "Finally, we do not find such a requirement nece-
ssary to avoid imposing unreasonable procedural burdens upon
state prisoners who may eventually seek habeas corpus.  A lit-
igant wishing to raise a federal issue can easily indicate the fed-
eral law basis for his claim in a states court <u>petition</u> or <u>brief</u>,
for example, by citing in conjunction with the claim the federal
source of law on which he relies or a case deciding such claim on
federal grounds, or by simply labeling the claim"federal".

204  Thus, petitioner so cited to the Massachusetts Appeals Court,
the last reasoned Massachusetts court, <u>Strickland</u> V. <u>Washington</u>,
cited supra, as the constitutional basis to judge petitioner's
professional conduct in the practice of his profession as a lic-
ensed lawyer and in the same professional context in the case at
bar before the court.

205  As stated supra, the Massachusetts Appeals Court did <u>not</u>,
as applied to petitioner's professional conduct in the practice
of his profession as a licensed lawyer, measure Palmer's profess-
ional conduct in accordance with the constitutional standard
in <u>Strickland</u> V. <u>Washington</u>, supra, and thus, as held in First Cir-
cuit case of <u>Phoenix</u> v. <u>Matesanz</u>, 233 F.3d 77 (1st Cir. 2000)
held, "First, " a state- court decision will be certainly contrary
to our clearly established precedent if the state court applies
a rule that contrdicts the governing law set forth (Supreme Court)
case." citing <u>Williams</u>, 120 S. Ct. at 1519." "For example, requir-
ing a petitioner to meet a higher burden than provided for in
<u>Strickland</u> would be contrary to clearly established Supreme Court

—91 OF

precedent."

206 Thus, in the case at bar before the court, the Massachusetts
Appeals Court decision was 'contrary to' clearly established
federal law as determined by the Supreme Court of the United
States and within the meaning of 28 U.S.C. 2254(d)(1), as the
Massachusetts Appeals Court decision involve errors of constit-
utional magnitude and prejudice to the petitioner, in the instant
case at bar before the court, in which counsel for the petitioner,
(Attorney Michael F. Clancy, an excellent lawyer and well res-
pected member of the Massachusetts and Federal Bars) cleatly cited
for support and authority, the constitutional standard of pro-
fessional conduct of petitioner's professional conduct as a lic-
ensed lawyer and in the same professional context as a duly app-
ointed fiduciary, in the instant case before the court, the Sup-
reme Court of the United States in Strickland V. Washington, 466
U.S. 668, 104 S. Ct. 2052, 80 L.Ed 2d 674(1984), as well as Miss-
ouri V. Jenkins, 491 U.S. 274, 288, 109 S. Ct. 2463, 2471, 105
L.Ed.2d 229 (1989), in which "The Supreme Court has given its
blessing to such a practice, stating "By encouraging the use of
lower cost paralegals rather than attorneys where possible, per-
mitting market-rate billing of paralegal hours encourages cost-
effective delivery of legal services and, by reducing the spiraling
cost of civil rights litigation, furthers the policies underlying
civil rights statutes.", Lipsett V. Blanco, 975 F.2d 934, 939. (1st
Cir. 1992), in brief filed with the Massachusetts Appeals Court,
on behalf of petitioner Palmer, in the instant case before the
court, and consistent with Baldwin v. Reese 541 U.S. 27 124 S. Ct.
1347 (2004)(Breyer, J) cited supra.

—92 oF

207 Also, the Massachusetts Appeals Court decision, in the context of the petitioner Palmer's professional conduct in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, in the instant case before the court, and in the petitioner's First Amendment rights and freedoms including the petitioner's First Amendment rights and freedom of association, as applicable through the Fifth Amendment and as applicable to the states through the Fourteenth Amendments to the United States Constitution, and clearly established federal law, as determined by the Supreme Court of the United States, in Missouri ⇓. Jenkins, as cited supra, this "relevant legal principle has constitutional dimensions" See e.g. Thompson v. Keohane 516 U.S. 99, 107, 116 S. Ct.457, 133 L.Ed.2d 383 (1995), as applied to petitioner's professional conduct and constitutional rights, in petitioner's practice of his profession as a licensed lawyer. See Miller ⇓. Fenton, 474 U.S. 104, 114, 106 S. Ct.445, 88 L.Ed.2d (1985), "..where...the relevant legal principle can be given meaning only through its application to the particular circumstances of a case." Thus, second-guessing petitioner's professional conduct, in this case at bar before the court, should be measured and judged pursuant to the constitutional standard of professional conduct as formulated by the Supreme Court in Strickland ⇓. Washington, cited supra, and in context, and not in a vacuum, in petitioner's practice of law, as a licensed lawyer, in petitioner exercising his best judgment, at the time, in the use of lower cost paralegals, for over (20) twenty years, in the context of criminal law, and petitioner's First Amendment rights and freedom

of association, as held in Missouri V. Jenkins, cited supra, and Strickland v. Washington, cited supra, all cited and argued in Massachusetts Appeals Court brief, in the instant case at bar, by Attorney Michael P. Clancy, on behalf of the petitioner, in performance standard of petitioner.

2o8 However, the Massachusetts Appeals Court ignored the legal principle's and holdings in Missouri V. Jenkins, supra, and Strickland V. Washington supra, and thus the Massachusetts Appeals Court decisions was 'contrary to' clearly established federal law as determined by the Supreme Court of the United States and the "unreasonable application clause" within the meaning of 28 U.S.C.2254(d)(1), in the case at bar before the court., and thus, the Massachusetts Appeals Court Decision, involved errors of constitutional magnitude, and petitioner was prejudice, which involved "a substantial ...denial of a constitutional right" in the practice of petitioner's practice of law, as a licensed lawyer and in the same professional context as a duly appointed fiduciary, and in the context of petitioner's First Amendment rights and freedom, including petitioner's guaranteed First Amendment rights and freedom of association, in the use of low cost paralegals, in petitioner's practice of law, as applicable through the Fifth Amendment, and as applicable to the states through the Fourteenth Amendments to the United States Constituion, for over (20) twenty years, in the permitted use of lower cost paralegals.

## CONTROLLING FIRST CIRCUIT AUTHORITY

2o8 The First Circuit in Barresi V. Maloney, 296 F.3d 48 (1st Cir. 2002) held (FN1), "At first glance, it might appear that Mele and

_94 oF

and Scarpa are at odds. In Mele, for example, we observed
that, "under the SJC's practice as we understand it, the court
receives the papers and briefs from the lower court only if---
and after--it grants ALOFAR." 850 F.2d at 822, That observation
led us to conclude that, at least when the SJC denies ALOFAR,
federal exhaustion review should be limited to the "four corners"
of that pleading. Id at 823. More recently however, we determined
that, notwithstanding the fact that the SJC denied a petitioner's
ALOFAR, the federal exhaustion inquiry must not be limited ex-
clusively to an examination of the petitioner's ALOFAR." Scarpa,
38 F.3d at 7. Despite the apparent conflict, Mele and Scarpa
are not inconsistent. In cases like Mele, where it is claer that
a petitioner has, on appeal to the SJC, abandoned federal constit-
utional claims advanced before the lower courts, it is entirely
appropriate to limit exhaustion inquiry to the "four corners" of
the ALOFAR. If however, it cannot be said that the petitioner
abandoned his or her federal claims on appeal to the SJC, federal
exhaustion review includes consideration of the petitioner's
lower court filings as a "backdrop" to his or her federal claims
on appeal to the SJC, federal exhaustion review includes consid-
eration of the petitioner's lower court filings as a "backdrop"
to his or her ALOFAR."

309  In the case at bar before the court, the petitioner Palmer
asserted in both petitioner's brief before the Massachusetts state
Court of Appeals and the petitioner's Application For Further
Appellate Review in the Supreme Court, the federal nature and
claims, involving issues of constitutional deminsion which in-

—95 oF

volve issues of constitutional magnitude in petitioner's pro-
fessional conduct in the practice of his profession as a lic-
enced lawyer and in the same professional context as a duly
appointed fiduciary, in petitioner's constitutional entitlement
in the use of lower cost paralegals, for over (20) twenty years,
in assigning the ministerial tasks of record keeping, bookkeeping
and clients' funds accounts reconciliation to the administrative
lay staff of petitioner's law office, in which First Circuit
precedent in Lipsett v. Blanco, 975 F.2d 934, (1st Cir.1992),
supra, held, "The efficient use of paralegals is, by now, an
accepted cost-saving device." "The Supreme Court has given its
blessings to such a practice, stating: "By encouraging the use
of lower cost paralegals rather than attorneys whereever possible,
permiting market-rate billing of paralegals hours encourages
cost-effective delivery of legal services and, by reducing the
spiraling cost of civil rights litigation, furthers the policies
underlying civil rights." citing Missouri v. Jenkins, 491 U.S.
274, 288, 109 S. Ct. 2463, 2471, 105 L.Ed.2d 229 (1989)(citation
and internal quotation marks omitted), as cited in brief filed
in the Massachusetts Supreme Judicial Court, as well as Rolland
v. Celluci, 106 F. Supp. 2d 128, 144 (D. Mass. 2000), all in
support of petitioner's First Amendment rights and freedom of
association, as applicable through the Fifth Amendment and as
applicable to the states through the Fourteenth Amendments to
the United States Constitution.

210 Missouri v. Jenkins, supra, and Rolland v. Cellucci, supra,
were cited as First Amendment rights and freedom of association
for authority of petitioner's professional conduct in the per-

mitted use of paralegals in petitioner's practice of his
profession as a licensed lawyer and in the same professional
context as a duly appointed fiduciary, in the instant case before
the court, as a constitutional entitlement under the First Amen-
dment rights and freedom of association as applicable through
the Fifth Amendment and as applicable to the states through the
Fourteenth Amendments to the United States Constitution, (see
e.g. Thompson v. Keohane, 516 U.S. 99, 107, 116 S. Ct. 457, 133
L.Ed.383 (1995)), which involve issue of constitutional magnitude
which, if meritorious, could substantially affect other lawyers
in the practice of law in the use of paralegals, as in the in-
stant case involving petitioner's professional conduct in the
use of paralegals.  See U.S. v. LaGuardia, 902 F.2d 1010,(1st
Cir. (Puerto Rico) 1990); National Ass'n of Social Workers v.
Harwood, (1st Cir.(R.I.) 1995); Quinn v. City of Boston, (1st
Cir. (Mass.)2003); T.I. Federal Credit Union v. DelBonis, 72
F.3d. 921, 930 (1st Cir. 1995) held," Cases involving important court
constitutional ` or governmental issues may be exceptional and,
as such, there should be a full treatment of all legal issues
involveds, whether squarely introduced by the parties or not."
⅔,₁₁   "...Issues of constitutional magnitude should not be the
subject of speculation but, rather should be litigated fully by
the parties with standing to represent various pertinent points
of view."   Quinn v. City of Boston, (1st Cir. (Mass.)2003)supra.
as to petitioner's professional conduct, in the practice of his
profession as a licensed lawyer, and constitutional entitlement of

—97 of

use of low cost paralegals, as in the instant w.t.r case, based upon

controlling First Circuit authority in Lipsett V. Bianco,

975 F. 2d 934, 939, (1st Cir. 1992), and clearly established

federal law, as determined by the Supreme Court in Missouri V.

Jenkins, 491 U.S. 274, 288, 109 S. Ct. 2463, 2471, 105 L.Ed.2d

229 (1989), in which the holdings, legal principles, as held in

these cases,in the context of the petitioner's professional con-

duct in the practice of his profession as a licensed lawyer, and

in the same professional context as a duly appointed fiduciary,

and in the petitioner's constitutional entitlement of guaranteed

First Amendment rights and freedom, including guaranteed First

Amendment rights and freedom of association, as applicable through

the Fifth Amendment and as applicable to the states through the

Fourteenth Amendments to the United States Constitution, present,

in the case at bar before the court, a delimma of constitutional

magnitude, in petitioner's use of low cost paralegals, in the

ministerial tasks assigned to the low cost paralegals, in petitioner's

law office, that threatens "a miscarriage of justice" as applied

to petitioner's professional conduct, and as applied to the Massach-

usetts criminal statutes, in the instant case. See U.S. V. LaGuar-

dia, 902 F.2d 1010 (1st Cir. 1990) supra.   Also, in the context

of petitioner's professional conduct in the permitted use of low

cost paralegals in the practice of law, involving ministerial

tasks of record keeping, bookkeeping and reconciliation of clients

funds accounts, petitioner asserts, in the instant case the app-

lication of the standard in Chapman v. California, 380 U.S. 18, 87

S. Ct.824, 17 L.Ed.2d 705 (1967), which held, "before a federal

constitutional error can be held, the court must be able to dec-

lare a belief that it was harmless beyound a reasonable
doubt", as cited supra herein.

212. The Supreme Court in United States ex rel McLennan v. Wil-
bur, 283 U.S. 414, 420, 51 S. Ct. 502, 504, 75 L.Ed.1148 (1931)
held, "..a duty is ministerial if"the obligation to act is pre-
ptory and plainly defined."

213 See trial court exhibit 156 introduced by both the Common-
wealth and the petitioner, as an undisputed and established fact
that the low cost paralegals assigned to reconcile clients funds
did not, for over (20) twenty years reconcile clients funds acc-
ounts and not one sworn witness testified that the bank records
were true and accurate,nor did any bank testifiy or attest that
the bank records were true and accurate, and the trial court
transcripts, as well as exhibit 156 (trial court exhibit number)
support that undisputed and established fact.  There is simply
no evidence that any bank records were true and accurate because
of the failure to reconcile clients funds accounts for over (20)
twenty years.  The low cost paralegals in the petitioner's law
office assign to reconcile clients funds accounts, did not do so
because they were simply too busy on other matters in the law
office to reconcile the clients funds accounts.  The petitioner
has filed objections to the District Court Judge findings that
bank records were true and accurate, without any reference to
the record or the trial court transcript,to support that con-
clusion.  Records were only available for (7) seven years based
upon the Commonwealth's witnesses, an accountant hired by the
Attorney General's Office,and who testified to that fact.

—99

¶14 Attach and incorporated herein to this Memorandum of
Law, in support of petitioner Walter E. Palmer's Application
For Certificate of Appealability pursuant to 28 U.S.C.section 2253
(c)(1)(A) and (2) and Local Rule 22.1, is Exhbit "A" (trial court
exhibit 156), letter dated May 14, 1996, (2 pages) from Elayne
L. Maloney to petitioner, at petitioner's request (for petitioner's
insurance company), which is made a part of this Memorandum by
reference, and marked as Exhibit "A".

¶15 Base upon clearly established federal law, as determined by
the Supreme Court in United States V. Boyle, 469 U.S. 241, 251,
105 S. Ct. 687, 83 L.Ed.2d 622 (1985), held, "When an accountant
or attorney advises a taxpayer on a matter of tax law, such as
whether a liability exists, it is reasonable for the taxpayer to
rely on that advice. Most taxpayers are not  competent to discern
error in the substantive advice of an accountant or attorney. To
require the taxpayer to challenge the attorney, to seek a "second
opinion," or to try to monitor counsel on the provisions of the
Code himself would nullify the very purpose of seeking the advice
of a presumed expert in the First place." See Haywood Lumbert v.
Comm'r of Internal Revenue 178 F.2d 769 at 771 (2d Cir. 1959)
"ordinary business care and prudence" do not demand such actions."
See Henry V. C.I.R. 170 F.3d 1217, 1220-1221 (9th Cir. 1999).

¶16 Petitioner, as stated supra, was by education, training,
wt & experience
experiace, and inclination a trial lawyer, and as testified,
"totally and completely" relied upon the (2) two Certified Public
Accountantants, James Argus of the accounting firm of Argus &
Freedman and Norman Freedman of the same accounting firm and later

of the accounting firm of Zuber & Freedman, in matters relating
to accounting, tax return preparation, probate accounting, and
reconciliation of clients funds accounts,in relation to those
specific tasks, for over (20) twenty years.

217 Norman Freedman, Certified Public Accountant, acknowledged
in trial court testimony that he performed those tasks and that
the late James Argus did also, but stated he did not reconciled
clients funds accounts.

218 In the context of the Massachusetts criminal statutes, upon
which the indictments in the instant case at bar rests, the pet-
itioner asserts that in thecontext of petitioner's professional
conduct in the practice of his profession as a licensed lawyer and
in the same professional context as a duly appointed fiduciary, in
the instant case at bar, petitioner has a constitutional entitlem-
ent to the protection of guaranteed First Amendment rights and
freedom including guaranteed First Amendment rights and freedom
of association, in the engagement of the (2) two Certified Public
Accountants, as applicable through the Fifth Amendment and as app-
licable to the states through the Fourteenth Amendments to the
United States Constitution and clearly established federal law, as
determined by the Supreme Court of the United States and within
the meaning of 28 U.S.C.2254(d)(1).  Thus petitioner asserts that
he was engaged at all times in constitutionally protected conduct
as to the (2) two Certified Public Accountants, in the instant
case as applied to Massachusetts criminal statutes in instant
case at bar before the court, in context of petitioner's prof-
essional conduct as a licensed lawyer in the practice of law, and

in the same professional context as a duly appointed fiduciary.

### SECOND-GUESSING PETITIONER'S ENGAGEMENT OF PERMITTED USE OF LOW COST PARALEGALS, AND CERTIFIED PUBLIC ACCOUNTANTS, IN CONTEXT OF PETITIONER'S FIRST AMENDMENT RIGHTS

219    Based upon controlling First Circuit precedent, in <u>Petitti</u>
v. <u>New England Telt &Tel. Co.</u>, 909 F.2d 31 (1st Cir. 1990), cited
supra, petitioner in exercising his judgment, in the course of
his practice of law as a licensed lawyer, in the instant case
before the court, assigned to low cost paralegals, in petitioner's
law office, Palmer & Simcock, the ministerial tasks relating to
record keeping, bookeeping and reconcilation of clients funds
accounts, for over (20) twenty years, and engaged (2) two indep-
endent Certified Public Accountant, James Argus and Norman Freed-
man of the accounting firm of Argus & Freedman, and Norman Freed-
man, later of the accounting firm of Zuber & Freedman, in matters
relating to accounting, tax return preparation, probate accounting
and reconciliation of clients funds accounts for over (20) twenty
years, in the instant case at bar before the court.

220    Thus, the petitioner asserts that "it is not the role of the
court, in the instant case before the court, to <u>second-guess</u> which
person would best fulfill the responsibilities of a certain w+p job" in
determining whether the petitioner, in the practice of law as a
licensed lawyer violated the Massachusetts criminal statutes, upon
which the indictments in the instant case entirely rest, in the
context of the petitioner's First Amendment rights and freedom
including the petitioner's First Amendment rights and freedom of
association, as applicable through the Fifth Amendment and as app-
licable to the states through the Fourteenth Amendments to the

United States Constitution.

223  Thus, in the context of the petitioner's professional conduct in the practice of his profession as a licensed lawyer and in the same professional context as a duly appointed fiduciary, and in the context of petitioner's First Amendment rights and freedom including petitioner's guaranteed First Amendment rights and freedom of association, as applicable through the Fifth Amendment and as applicable to the states through the Fourteenth Amendments to the United States Constitution, the Supreme Court in Houston v. Hill, 482 U.S. 451, 107 S. Ct. 2502, 96 L.Ed.2d 398 (1987) held,"Criminal statutes must be scrutized with particular care, e.g., Winters v.New York, 333 U.S.507, 515, 68 S. Ct.665, 670, 92 L.Ed.840 (1948); those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invlaid even if they also have legitmate application." E.g.Kolender v. Lawson, 461 U.S. 352, at 359, n.8, 103 S. Ct. 58, at 1859, n.8 75 L.Ed.2d 903 (1983). See also, Nat'l Assoc of Soc. Workers v. Harwood, 69 F.3d 622, 28 (1st Cir. 1995) (deciding that appellate court could hear an issue not raised below in part because omission was inadvertent, not deliberate)." U.S. v. Patrick, 359 F.3d 3 (1st Cir. 2004).

224 See United States v. Krynicki, 689 F.2d 289, 292 (1st Cir. 1982) as cited in Patrick, supra, "Furthermore, because this legal question is likely to arise in other case--" "---declining to hear the issue will neither promote judicial economy nor aid in the administration of the Juvenile justice system (in the instant case the attorney's use of low cost paralegals and Certified Public Accountants, in a lawyers practice of law) See also, Pincay v. Andrews,

389 F.3d 853 (9th Cir. (Cal.) 2004) involving a"lawyer's night-
mare"in the permitted use of law office paralegals, as cited supra.
as in the instant case at bar before the court.

IN CONTEXT OF MASSACHUSETTS CRIMINAL STATUTES
PROPER MEASURE OF PETITIONER'S PROFESSIONAL CONDUCT
IN THE PRACTICE OF HIS PROFESSION AS A LICENSED LAWYER
IS CONSTITUTIONAL STANDARD IN STRICKLAND v. WASHINGTON
466 U.S.668, 104 S. Ct.2052, 80 L.Ed.2d 674 (1984) and
CONTROLLING FIRST CIRCUIT PRECEDENT

225 In this case at bar before the court, petitioner, through

Attorney Michael P. Clancy (representing petitioner before the

Massachusetts Appeals Court) filed brief, with the Massachusetts

Appeals Court, citing for authority petitioner's professional

conduct, in practicing his profession as a licensed lawyer, Strick-

land v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d

674 (1984), for measuring the professional conduct of petitioner's

professional conduct as relates to the Massachusetts criminal

statutes, upon which the indictments against the petitioner ent-

irely rests. See copy of petitioner's brief in Massachusetts App-
eals Court attached, as Exhibit "G"

226 Massachusetts Appeals Court decision was 'contrary to clearly

established federal law as determined by the Supreme Court in

Strickland v. Washington, supra, and within the meaning of 28 U.S.C.

2254(d)(1), and did not apply Strickland v. Washington constitutional

standard of petitioner's professional conduct to its decision,

a copy of which is marked as Exhibit "C" and incorporated herein

to this Memorandum of Law by reference.

227 The Massachusetts Appeals Court did not apply the proper

rule of law as to petitioner's professional conduct.

228 The Massachusetts Appeals Court decision, Judgment dated

—104 of

February 4, 2003, involves prejudical errors and constitutional
magnitude against the petitioner "Palmer" in his professional
conduct in the practice of his profession as a licensed lawyer
and duly appointed fiduciary, in the context of petitioner's
First Amendment rights and freedom including First Amendment rights
and freedom of association, as applicable through the Fifth Amend-
ment and as applicable to the states through the Fourteenth Amen-
dment to the United States Constitution, and was 'contrary to'
clearly established federal law as determined by the Supreme Court
of the United States,

229 "The freedoms protected against federal encroachment by the
First Amendment are entitled under the Fourteenth Amendment to
the same protection from infringement by the States. United Mine
Workers V Illinois State Bar Association, 389 U.S. 217, 88 S. Ct.
353, 356 n.4, 19 L.Ed.426 (1967). See also, Edwards V. South Car-
olina, 372 U.S. 229, 83 S. Ct. 680, 683, 9L.Ed.697 (1963).

230 The Massachusetts court decisions, including the Massachusetts
Appeals Court decision, Violates the petitioner's First Amendment
rights in the context of petitioner's professional conduct in the
practice of his profession as a licensed lawyer and in the same
professional context as a duly appointed fiduciary, in the instant
case at bar before the court, in seeking to criminalize the pro-
fessional conduct of petitioner.

231 The Supreme Court in Gentle V. State Bar of Nevada, 510 U.S.
1030, 111 S. Ct. 2720, 2726, 2734, 115 L.Ed.2d 288 (1991) held,
"We have held that "in cases raising First Amendment issues," an
appellate court has an obligation to make sure that the judgment
does not constitute a forbidden intrusion on the field of free

— 105 oF

expression." citing <u>Bose Corp</u> v. <u>Consumers Union of United</u>
<u>States Inc.</u>, 466 U.S. 485, 499, 104 S. Ct.1949, 1958, 80
L.Ed.2d 502 (1984)(quoting <u>New York Times</u> ⍦. <u>Sullivan</u>, 376 U.S.
254, 284-286, 84 S. Ct. 710, 728-729, 116 L.Ed.2d 686 (1964)."
232 Thus, the Massachusetts Appeals Court decision did <u>not</u>
apply any, none, zero, federal constitutional standard of any
kind, to measure petitioner's professional conduct, and was
therefore a decision involving prejudical errors of constit-
utional magnitude and violation of petitioner's First Amendment
rights and freedom in petitioner's practice of law as a licensed
lawyer in petitioner's constitutional entitlement of use of
low cost paralegals, under clearly established federal law as
determined by the Supreme Court of the United States in <u>Missouri</u>
v. <u>Jenkins</u>,491 U.S. 274, 288, 109 S. Ct.2463, 2471, 105 L.Ed.2d
229 (1989), and controlling First Circuit law, in <u>Lipsett</u> v. <u>Blanco</u>,
975 F.2d 934, 939, (1st Cir.1992), both as cited supra..
233 "In order to established prejudice the petitioner need only
show "a probability sufficient to undermine confidence in the out-
come." <u>Williams</u> ⍦. <u>Taylor</u>, 529 U.S. 369, 394 (2000), cited supra.
234 In any event, the issues are of constitutional magnitude, are
meritorious, and are likely to be presented in other cases. See
<u>National Ass'n of Social Workers</u> ⍦. <u>Harwood</u>, 69 F.3d 622, 628-629
(1st Cir. 1995); <u>In re 604 Columbus Ave. Realty Trust</u>, 968 F.2d
1332, 1343 (1st Cir. 1992).
235 The Supreme Court in <u>Miller-El</u> v.<u>Cockrell</u>, 537 U.S.322, 123
S. Ct. 1029, 154 L.Ed.2d 931 (2003) held, "Consistent with our
prior precedent and the text of the habeas corpus statute, we

reiterate that a prisoner seeking a COA need only demonstrate
"a substantial showing of the denial of a constitutional right."
28 U.S.C. section 2253(c)(2). A petitioner satisfies this stan-
dard by demonstrating that jurists of reason could disagree with
the district court's resolution of his constitutional claims or
that jurists could conclude the issue presented are adequate to
deserve encouragement to proceed further." Slack, supra, at 484,
120 S. Ct. 1595."

CONCLUSION

For the foregoing reasons, the Petitioner respectfully
request that this Court issue a certificate of appealability in
matter so that Petitioner "Palmer" may pursue his appeal of the
denial of a writ of habeas corpus.

Signed under the pains and penalities of perjury this 3rd day of
September, 2005.

Respectfull submitted
Walter E. Palmer, Esquire
Petitioner (Pro Se)

Walter E. Palmer, Esquire
49 Samoset Road
P.O. Box 1776
Duxbury, Mass., 02331

Petitioner (Pro Se)

PRESENT MAILING ADDRESS
Walter E. Palmer
Souza-Baranowski
Correctional Center
P.O. Box 8000
Shirley, Mass., 01464.

Certificate of Service

I, Walter E. Palmer hereby certify that I have mailed, postage
prepaid, by First-Class mail a true copy of the above document to
attorney of record on September 6, 2005.

Walter E. Palmer, Esquire